GRANT *v.* TALLMAN *et al.*

The grantee of land with covenant against incumbrances cannot defend in an action for the purchase money on the ground of an outstanding incumbrance, where he remains in undisturbed possession, has paid nothing upon the incumbrance and his grantor has made it a primary charge upon other lands which are an ample indemnity.

*It seems,* that the grantor, in the absence of fraud, will not be held to indemnify against, or pay his grantee for removing, an incumbrance not actually due or enforceable, without having had notice to do it in a limited time, or that on his default the grantee would himself pay a specified sum for the purpose. Per STRONG, J.

The recovery for the breach of such covenant in the absence of fraud is, it seems, restricted to the actual amount or value of the incumbrance not exceeding the consideration of the grant, with interest where the purchaser has not enjoyed the possession. Consequential damages are not allowed.

APPEAL from the Supreme Court.   Action to foreclose a mortgage of a lot situate on the corner of Hammond and West streets, in the city of New York.   The mortgage was by the defendants Tallman and wife to John Greene, and was dated on the 15th of April, 1845.   It was given to secure the payment of $1,000, with interest, on the 18th of October, 1847, that being a part of the purchase money for the same lot, which had been conveyed by Greene to Tallman by a deed dated on the same day, for the consideration of $6,000.   The mortgage was assigned to the plaintiff to secure a debt due to him on the 5th of February, 1848.   The deed from Greene to Tallman contained covenants of warranty and against incumbrances. The defendants Tallman and wife alone resisted the foreclosure.   Their answer averred that the lot, with other premises, was at the time of the conveyance to Tallman and still is subject to an incumbrance in the nature of quit-rent to the corporation of the city of New York, which was known to Greene at the same time, and that he fraudulently represented that it was free from any incumbrance.   They did not ask that the damages resulting to Tallman by reason of the incumbrance should be allowed to him as a set-off or by way of recoupment, but set up the facts as might have been done if such damages exceeded the amount of the mortgage, and the plaintiff was therefore barred from any right of purchase.   The history of the alleged incumbrance is as follows : On the 1st of May, 1821, the corporation of the city conveyed by deed to Abijah Hammond two plats of ground, one of which included the mortgaged premises subject to a ground or quit-rent, which after the 1st of May, 1843, should be perpetually $623 a year. There were further stipulations by the grantee, but they relate to other portions of the land conveyed to him and do not seem to have been made a subject of controversy in this suit. On the 1st of November, 1822, Hammond, with two other persons acting as trustees, conveyed the lot in controversy to Greene by a deed with full covenants, including those of warranty and against all incumbrances.   On the 22d of January, 1824, Hammond and his assignees conveyed a large portion of

Greene *v.* Tallman.

the said two plats of ground to Joshua Waddington, expressly subjecting such portion to the payment of $\frac{505}{997}$th parts of the said quit-rent. On the 27th of June, 1827, the same grantors conveyed another lot on one of the said plats to Nicholas Jones, in like manner subjecting that to the payment of $\frac{406}{997}$th parts of such quit-rent; and on the same day the same grantors conveyed the only remaining lot to Henry Hutchings, also subjecting that to the payment of the remaining $\frac{406}{997}$th parts of the quit-rent. The entire quit-rent for 1845 was charged on the rent-roll of the corporation to the twelve proprietors of the lots which had been originally conveyed to Waddington, Jones and Hutchings, and was paid in part by all but two of them, one of whom had since commuted for his entire portion with the common council. No part of the quit-rents had ever been paid by Greene or Tallman. On the 7th of March, 1853, it was announced in a circular signed by Flagg, the then comptroller of the city, that pursuant to an ordinance of the common council, where quit-rents were charged conjointly on tracts of land held by different proprietors in severalty, he would commute for the rent on any of such tracts on receiving satisfactory evidence that the amount to be paid for a release was not less than the amount charged on the portion of land to be released by any prior arrangement between the owners. It was admitted on the trial that the lands conveyed as before mentioned to Waddington, Jones and Hutchings were abundant security for the rents charged upon them respectively, each of the twelve lots being worth $4,500. The sum of $3,365.09 of such rents remained unpaid at the time of the trial. A witness for the defendant testified that in 1847, he commenced a negotiation with the defendant Tallman to purchase the lot for $7,500, and would have given that amount for it had he not discovered that it was subject to the quit-rent; when he declined to purchase it. The same witness further testified that he thought that the present value of the lot, if clear from the incumbrance, would be about the sum of $7,500. Another witness for the defendant, one William Bradford, testified that he had purchased the lot in question from the defendant in

1851 or 1852, for $8,000, and had received from him a quit-claim deed without any covenants. That in his opinion the reduction in its actual value by reason of the quit-rent was then about $2,000, and in 1845 from $1,500 to $2,000. The cause was tried before Mr. Justice MITCHELL, without a jury, at a special term held in New York city, when a judgment was rendered, upon his finding, in favor of the plaintiff for $1,499.16, being the amount of the mortgage. The judgment was subsequently affirmed at a general term, and the defendants appealed to this court.

*John K. Porter*, for the appellants.

*William Inglis*, for the respondent.

S. B. STRONG, J. There can be no doubt that if the charge of fraud preferred against Greene in the answer had been proved, Tallman, if he had not sold the property, would have been entitled to recoup in this suit to the extent of his actual damage; and if that had exceeded or equaled the amount of the mortgage, it would have constituted an entire defence. But there was no attempt to show any fraud, nor was there anything in the evidence from which it could be inferred, on the trial.

In the absence of fraud, a party who has purchased real estate, and received a deed for it containing a covenant that it is free from any incumbrance, and has subsequently paid off and discharged an incumbrance, may set off what has been paid by him against the amount due on any mortgage for the purchase money. In order to avail himself of such defence, however, he would be bound to prove either that what had been paid by him was actually due, or that he had given notice to his vendor requiring that such vendor should pay off the incumbrance within a limited time, or that otherwise the purchaser would pay a specified amount. Some of the authorities lay down the rule that the purchaser may set off or recover the amount paid without any qualification; but it

seems to me reasonable that a vendor who has been innocent of any fraud should have an opportunity to set himself right before he should be obliged to pay or allow more than the amount actually due. It is, I think, well settled that where the incumbrance has not been paid off by the purchaser of the land, and he has remained in quiet and peaceable possession of the premises, he cannot have relief against his contract to pay the purchase money, or any part of it, on the ground of defect of title. The reason is, that the incumbrance may not, if let alone, ever be asserted against the purchaser, as it may be paid off or satisfied in some other way; and then it would be inequitable that any part of the purchase money should be retained. The circumstances of this case furnish a strong illustration of the reasonableness of the principle. It is quite apparent that there is no probability that the owner of the mortgaged premises will ever be called upon to pay any part of the quit-rents. There is a mere possibility that a claim may be made by the city corporation; but in such case the existing owner may, by a complaint in equity, coerce the entire payment out of the other portions of the lands conveyed to Hammond; and if he could not do that, a recovery against him would enable him to sue for, or recoup, the fair value of the entire incumbrance.

The defendants Tallman and wife seek to recoup the damages sustained by them by reason of the liability of the land for contribution towards payment of the quit-rents, and estimate such damages at the difference between what he obtained and what, but for the incumbrance, he might have obtained for the lot. But such is not the rule, except in cases of fraud. Parties in other cases can only be entitled to the amount actually payable on such incumbrance, or, where the amount cannot be ascertained by calculation, to its value. In the case of *Dimmick* v. *Lockwood* (10 *Wend.*, 155), Chief Justice SAVAGE remarked that "in all the cases which have been cited, there is none in our own courts where the purchaser has been permitted to recover beyond the consideration and interest and costs. There is none in Massachusetts where, under the covenant

against incumbrances, the purchaser has recovered any more, though there the rule allows a recovery for the value at the time of the eviction. All the reasoning of our own judges goes to limit the responsibility of the grantor to the consideration with interest and costs; and I am unwilling to go further where the principle to be established may lead to greater injustice." That was an action for the breach of a covenant in a deed of land that it was free from incumbrances, and the decision was that the recovery should be limited to a portion of the consideration equivalent to the extent of the incumbrance, and not include the enhanced value of the land in consequence of subsequent improvements. The same is true in cases where there has been a general advance in the price of real estate. I am satisfied that the established rule in such cases is, that the recovery, when any can be had, must be restricted to the actual amount or value of the incumbrance, and, where the purchaser has not occupied or enjoyed the premises, the interest. No consequential damages are allowed. The reason given is, that when the incumbrance is actually unknown to the vendor, as is generally the case where he covenants against them, the means of discovering them are, or with proper exertions may be, equally accessible to both parties. If the intended purchaser should make proper examination, he would ordinarily discover an incumbrance, which must be in writing, and the evidence on record; and should he neglect to do that, he cannot reasonably claim any more than an exemption from positive loss. Now, what is the value of a lien specifically upon the lot in question? Under the circumstances, it is nothing. What is the actual loss to the defendant Tallman? That, too, is nothing. He was to pay or allow, in all, $6,000 for the lot. He occupied it without the payment of any part of the quit-rent until his sale to Bradford, when he obtained for it $8,000. He entered into no covenants in his deed, and, as the purchaser was not deceived as to the incumbrance, Tallman is under no obligation to return any part of the purchase money, should the lien for any part of the rent be enforced against the premises. The demand was not enforced

against him while he owned the lot, nor has it been since, nor can it be now. He might, it is true, be subjected to a judgment if there should not be enough in the proceeds of the land to satisfy the debt and costs. But considering what he alleges to be the value of the premises, there is not enough of probability of there being a deficiency to form the basis of any action. Possibly the judgment might have been so qualified as to relieve him from any such liability, if he had asked for it; but he did not. I think that, under the circumstances, the defendant's claim to recoup or set off damages was properly rejected.

The assignment from Greene vested in the plaintiff the legal title to the securities. He was the legal owner when this suit was instituted, and the suit was rightly commenced in his name. It could be legally continued in his name, notwithstanding his having received the debt for which the securities had been assigned to him. ( *Code*, § 121.)

The judgment should be affirmed.

All the judges (except SELDEN, J., who was not present) concurring,

Judgment affirmed.