WILLIAM J. MACK, Respondent, v. THADDEUS D. PATCHIN, Appellant.

On a breach of the covenant for quiet enjoyment implied in a lease, where an eviction is occasioned through fault of the lessor, the measure of damages is the value of the unexpired term less the rent reserved.

(Argued January 14, 1870; decided March 18, 1870.)

APPEAL from a judgment entered on the decision of the General Term of the Superior Court of Buffalo, upon exceptions heard in the first instance at General Term, ordering judgment upon a verdict for the plaintiff.

The action was brought to recover damages for an alleged breach of a covenant for quiet enjoyment. The defendant leased to the plaintiff, for the term of six years, a certain warehouse in the city of Buffalo. When the lease was executed, the defendant was owner of the demised premises in fee, but subject to certain mortgages then a lien upon them. These mortgages were subsequently foreclosed, and the demised premises, being sold under the decrees of foreclosure, were purchased by the defendant and one Dorsheimer jointly. The purchasers subsequently applied for and obtained a writ of assistance against the plaintiff, and the plaintiff left the premises, having been in possession about two years.

The lease did not, in terms, contain any covenant for quiet enjoyment.

After the writ of assistance was issued, but while the plaintiff was still in possession, an arrangement in writing was made (February 10th, 1863) between the plaintiff and defendant and Dorsheimer, by which the plaintiff was to remain in possession until the May following, paying rent at the same rate as that specified in the lease.

On the trial, the court instructed the jury that the lease contained a covenant for quiet enjoyment, and submitted to their decision whether there had been an eviction, and whether the lease of February 10th was intended as a surrender by the plaintiff of any rights or cause of action he might have under or growing out of the original lease ; and, if they found for the plaintiff on these two questions, what was the amount of damages. The jury were further instructed that an expulsion from the premises by actual physical force was not necessary to an eviction, but it was sufficient if the plaintiff found himself compelled to yield up the premises, by reason of physical force threatened against him, under the writ of assistance, which he had justifiable cause for believing would be actually applied to him if he refused compliance ; and it was for them to find whether he gave up the premises under that kind of compulsion or not. That the lease of February 10th did not of itself, as matter of law, necessarily amount to a surrender of the rights growing out of the original lease ; but its effect depended upon the intention of the parties, which it was for the jury to decide. If they came to the question of damages the measure was the value of the unexpired term of the lease at the time of eviction over and above the rent reserved by the terms of the lease, the value to be estimated from the first of May, 1863.

To these propositions the defendant excepted.

The court was requested to charge that the lease set forth in the complaint did not contain a covenant for quiet enjoyment; the lease of February 10th, was to be taken as a surrender by the plaintiff; the matters in issue were *res adjudicata*

and the plaintiff's right of action was barred by the judgments of foreclosure and proceedings thereunder; there was no eviction shown for which the plaintiff could recover; and that the value of the lease, over and above the rent reserved, was not the measure of damages. These several requests were refused and the defendant excepted.

The jury found a verdict for $1,941.67, in favor of the plaintiff.

The exceptions were ordered to be heard in the first instance at General Term, where judgment was ordered for the plaintiff, upon the verdict, from which judgment the defendant appealed to this court. The case in the Superior Court, is reported 29 How. Pr. R., 20.

*John Ganson*, for the appellant, on the point that the court erred as to the proper measure of damages, cited *Flureau* v. *Thornhill* (2 Wm. Blackstone, 1078); *Walker* v. *Moore* (10 Barn. & Cress., 416); *Tyrer* v. *King* (2 Carr. & Kir., 149); *Pounsett* v. *Fuller* 17 C. B., 660); *Sikes* v. *Wild* (1 Best & Smith, 587); S. C. aff'd., 4 Best & Smith, 421; *Hopkins* v. *Grazebrook* (6 Barn. & Cress., 31); *Robinson* v. *Harman* (1 Exch., 850); *Engle* v. *Fitch* (3 Q. B. Law Rep., 314); *Williams* v. *Burrell* (1 Man. G. & S., 402); *Lock* v. *Furze* (19 C. B., 96); S. C. aff'd., 1 Com. Pl. Law Rep., 441; *Baldwin* v. *Munn* (2 Wend., 399); *Peters* v. *McKeon* (4 Den., 546); *Conger* v. *Weaver* (20 N. Y., 140); *Bush* v. *Cole* (28 N. Y., 261); *Trull* v. *Granger* (4 Seld., 115); *Driggs* v. *Dwight* (17 Wend., 71); *Brinckerhoff* v. *Phelps* (24 Barb., 100); 4 Kent., 475, 480; *Staats* v. *Ten Eyck* (3 Caine R., 111); *Pitcher* v. *Livingston* (4 John., 1); *Bennett* v. *Jenkins* (13 John., 50); *Kinney* v. *Watts* (14 Wend., 38); *Kelly* v. *Dutch Church of Schenectady* (2 Hill, 105); and insisted that the case disclosed no fraudulent or wrongful act on the part of the defendant, so as to take it out of the settled rule. That the rights of the parties were adjudicated on the application for writ of assistance, he cited *Dwight* v. *St. John* (25 N. Y., 203).

*Sherman S. Rogers*, for the respondent, on the point that the lease contained a covenant for quiet enjoyment, cited *Young* v. *Hargrave* (7 Ohio, 429); *Hart* v. *Smith* (2 A. K. Marshall, 302); *Maule* v. *Ashmead* (20 Penn., 8 Harris, 482); *Hemphill* v. *Eckfelt* (5 Whart., 274); *Hamilton* v. *Wright* (28 Mis., 199); *Ross* v. *Dysart* (33 Penn., 452); *Steele* v. *Frick* (56 Penn., 173); *Ellis* v. *Welch* (6 Mass., 249); *Knapp* v. *Marlboro* (29 Vt., 286); *Black* v. *Gilmore* (9 Leigh, 448); *Dexter* v. *Manley* (4 Cush., 26); *Wade* v. *Halligan* (16 Ill., 511); *Bangher* v. *Wilkins* (16 Maryland, 14 Miller, 45); *Messent* v. *Reynolds* (3 Man. G. & S., 200); *Bandy* v. *Cartwright* (20 Eng. L. & Eq., 374); *Hart* v. *Windsor* (12 M. & W., 85); 1 Wash. on Real P., 3d ed., 427; Woodf. Land. & T., 6th ed., pp. 88, 504; Rawle on Cov., 362 and note 2; 2 Thomas' Coke, 204; 1 Pars. on Cont., 5th ed., 500; Story on Cont., § 906; Comyn's Land. & T., 172; Shep. Touch., 271; Chitty's Gen. P., 344–5; Taylor's Land. & T., § 304; Archibald L. & T., 276; *Style* v. *Herring* (Croke Jac., 73); Andrew's case of Gray's Inn, Cro. Eliz., 214, 674; Noke's case, 4 Coke R., 80 *b;* Dyer, 257 *a; Holder* v. *Taylor* (Hob., 12 *a*). That the measure of damages was correct, he cited *Erwin* v. *Olmsted* (7 Cow., 229); *Locke* v. *Furze* (19 C. B. N. S., 115, E. C. L. R., 96); *Williams* v. *Burrell* (1 C. B., 402, E. C. L. R., 50); *Trull* v. *Granger* (4 Seld., 115); *Tracy* v. *Albany Exch. Co.* (3 Seld., 472); *Driggs* v. *Wright* (17 Wend., 72); *Ward* v. *Smith* (11 Price, 19); *Giles* v. *Toole* (4 Barb., 261); *Chatterton* v. *Fox* (5 Duer, 64); *Dean* v. *Roesler* (1 Hilt., 420); *Myers* v. *Burns* (35 N. Y., 269); Woodf. Land. & T., 6th ed., 643; 1 Washb. on Real P., 3d ed., 428; Sedgw. on Dam., 4th ed., 181, and note 1; *Adair* v. *Bogle* (20 Iowa, 239); *Rhodes* v. *Baird* (16 Ohio St. R., 581); *Dexter* v. *Manly* (4 Cush., 26); *Conger* v. *Weaver* (20 N. Y., 140); *Brinkerhoff* v. *Phelps* (24 Barb., 100); *Grant* v. *Tallman* (20 N. Y., 191). That plaintiff's rights were not prejudiced by the proceedings to obtain the writ of assistance, he cited *N. Y. Life & Trust Co.* v. *Rand* (8 How. Pr. R., 352; id., 35; 21 How., 34; Hop., 231, 422; 9 How.,

407); *Lawrence* v. *Hunt* (10 Wend., 84); *Kerr* v. *Hays* (35 N. Y., 331); *Wood* v. *Jackson* (8 Wend., 45, 6; 18 Wend., 107); *Campbell* v. *Consolus* (25 N. Y., 613); *Dwight* v. *St. John* (25 N. Y., 203); *Pendleton* v. *Weed* (17 N. Y., 72); *Banks* v. *Amer. Tract Society* (4 Sandf. Ch., 438); *Hackett* v. *Connett* (2 Edw., 73); *Van Rensselaer* v. *Sheriff of Albany* (1 Cow., 501); 2 Cow. & Hill's Notes to Phil. Ev., 825; *Belmont* v. *Erie R. R. Co.* (52 Barb., 637); *Smith* v. *Spalding* (3 Rob., 617, 30 How., 339); *White* v. *Minerve* (33 Barb., 654); *Dollfus* v. *French* (5 Hill, 494, and note *a*).

EARL, Ch. J. The law is too well settled to be doubted or shaken, that a lease like the one under consideration contains an implied covenant for quiet enjoyment. This covenant having been broken in this case, the plaintiff was entitled to recover, and the only serious question is as to the measure of damages.

The measure of damages, in an action against the vendor for breach of a contract for the sale of personal property, is the difference between the contract and the market price. But the same rule has not been applied against the vendor or lessor of real estate. Ordinarily, in an action against the vendor of real estate for breach of covenant of warranty, the vendee can recover only the consideration paid, and interest for not exceeding six years; and when the contract of sale is executory, no deed having been given, in cases where no part of the purchase money has been paid, the vendee can recover only nominal damages; and in cases where purchase money has been paid, he can recover the purchase money, interest and nominal damages. In an action by the lessee against the lessor for breach of covenant for quiet enjoyment, the lessee can ordinarily recover only such rent as he has advanced, and such mesne profits as he is liable to pay over; and in cases where the lessor is sued for a breach of a contract to give a lease or to give possession, ordinarily the lessee can recover only nominal damages and some incidental expenses, but nothing for the value of his lease. These rules, however

much they may be criticised, must be regarded as settled in this State. But at an early day, in England and in this country, certain cases were declared to be exceptions to these rules, or more properly speaking, not to be within them; as, if the vendor is guilty of fraud; or can convey but will not, either from perverseness or to secure a better bargain; or if he has covenanted to convey, when he knew he had no authority to contract to convey; or where it is in his power to remedy a defect in his title, and he refuses or neglects to do so; or when he refuses to incur expenses which would enable him to fulfill his contract; in all these cases, the vendor or lessor is liable to the vendee or lessee for the loss of the bargain, under rules analogous to those applied in the sale of personal property. (*Bush* v. *Cole*, 28 N. Y., 261; *Trull* v. *Granger*, 4 Selden, 115; *Driggs* v. *Dwight*, 17 Wend., 71; *Brinckerhoff* v. *Phelps*, 24 Barb., 100; *Tracy* v. *The Albany Exchange Company*, 3 Seld., 472; *Chatterton* v. *Fox*, 5 Duer, 64; *Dean* v. *Roesler*, 1 Hilt., 420; *Grant* v. *Tallman*, 20 N. Y., 191; *Conger* v. *Weaver*, 20 N. Y., 140; *Lock* v. *Furze*, 1 Law Reports Com. Pleas, 441; *Engle* v. *Fitch*, 3 Law Reports Queen's Bench, 314.)

In the last case cited, COCKBURN, Ch. J., says: "The purchaser (of personal property) will be entitled to the difference between the contract and the market price. There is nothing in the nature of real property which, either on technical or general grounds, should take a contract for the sale of real estate out of this general rule, with one single exception, namely, that owing to the state of the law as to real property, the undoubted owner of an estate often finds, unexpectedly, difficulty in making out a title, which he cannot overcome; if, an obligation to make out title being implied in every such contract, the opposite party rejects the title and repudiates the contract, it seems not altogether unreasonable that he shall be entitled to no more than the return of the deposit, if any, and the expense of investigating the title. In this exceptional case, he is put, not in the condition in which he would have been if the contract had been performed, but in

the condition in which he would have been if the contract had not been made. He is where he was before, without the estate and the benefits it would have brought him, if a title could have been made to it. But the limit of the exception is to be found in the reason on which it is based. The reason ceasing, the rule should cease." In the same case the learned judge says that the rule "should have no application when the failure either to make out a title or to give possession arises, not from the inability of the vendor, but from his unwillingness either to remedy a defect in the title or to obtain possession on the score of expenses."

In this case, the defendant resided in Buffalo, where the real estate was located, and he owned the real estate at the time he made the lease; and, in the absence of any proof to the contrary, he must be presumed to have known of the mortgages upon the real estate at the time he made the lease. He is, therefore, within the rule of law above alluded to, liable to the damages awarded against him, because he gave the lease knowing of the defect in his title. Then, too, he should be held liable to these damages because, being the owner of the equity of redemption, and there being, so far as appears, no obstacle in the way, he did not pay up the mortgages and thus perfect his title and protect the lease which he had given. Again, instead of purchasing the real estate at the mortgage sale jointly with Dorsheimer, why did he not, being the owner of the equity of redemption, bid off the real estate alone, and thus protect the lease which he had given, knowing of these incumbrances upon his title? So far as appears, it was not impracticable nor even difficult for him to do so. When he gave this lease, if he acted in *good faith*, he must have intended, in some way, to have taken care of these mortgages; and, because he did not do so, having the ability, so far as appears, to do so, he should be held liable to the damages recovered. He not only failed to do his duty to the plaintiff in any of the respects here indicated, but went actively to work to remove him from the premises, and succeeded in doing so. He can claim no benefit

from the fact that he did not do it alone, but that he did it in conjunction with Dorsheimer. It is not certain that Dorsheimer would have purchased without him, or that he would have moved to dispossess the plaintiff without his co-operation, and against his wishes. He aided in dispossessing him, not of half the premises only, but of the whole; and hence he must, in this action, be responsible as if he had done it alone. Upon the whole, therefore, I am clearly of the opinion that the judgment should be affirmed.

E. DARWIN SMITH, J. If it was admissible in practice in this court, I should be quite content to affirm the judgment in this case, upon the careful and able opinion delivered at the General Term of the court below, and reported in 29 Howard, 20.

It can hardly be doubted, I think, at this day, that, by the general assent of the courts in this State, a covenant for quiet enjoyment is implied in every mutual contract for the leasing and demise of land, by whatever form of words the agreement is made. (Smith's Landlord and Tenant, 206; Taylor's id., § 302; *The Mayor of New York* v. *Mabie*, 3 Kernan, 160; 11 Paige, 566; *Tone* v. *Brace*, 8 id., 597; *Vernam* v. *Smith*, 15 N. Y., 328; *Graves* v. *Burdan*, 26 id., 498.)

The principal question in the cause, and the one chiefly urged upon our attention on the argument, arises upon the exception to the charge of the judge, in respect to the proper measure of damages. The learned judge instructed the jury that "the measure of damages was the value of the unexpired term of the lease at the time of the eviction, over and above the rent reserved by the terms of the lease.

The rule of damages as thus laid down is clearly in conflict with the rule long settled, and applied in actions upon the personal covenants running with the land in deeds, or upon contracts for the sale of land upon the failure of title. In such cases, the rule generally applied in England and in this country is to restore to the purchaser all he has paid or advanced

upon the purchase, with interest and expenses, and to place the vendee as far as possible, in the same condition as if the contract of purchase had never been made. And this has been done upon the basis or assumption of mutual mistake, or error between the parties. (4 Kent, 479; Kames Principles of Equity, vol. 1, 288 and 289; *Flureau* v. *Thornhill*, 2 W. Blackstone, 1078; *Conger* v. *Weaver*, 20 N. Y., 140.) But this court has recently held, in *Pumpelly* v. *Phelps* (40 N. Y., 60), that this rule should be limited to cases of good faith, and that, when a vendor contracts to sell lands, in which he knows at the time that he has no title, he is bound to make good to the vendee the loss also of the bargain sustained by his fault or fraud.

In analogy with the rule thus applied to purchasers of land, in actions upon the covenant for quiet enjoyment in leases, the same rule has been applied to lessees, so far as it was applicable. As no consideration is paid in such case, the rent reserved has been regarded as a just equivalent for the use of the demised premises, and as, in case of eviction, the rent ceases and the lessee is discharged from its payment, he recovers nominal damages, and for such mesne profits as he is liable to pay the true owner, and any costs he may have been compelled to pay in defence of his title. (*Kelly* v. *The Dutch Church of Schenectady*, 2 Hill, 105; *Moak* v. *Johnson*, 1 id., 99, and *Baldwin* v. *Munn*, 2 Wend., 399.)

But this rule has not been very satisfactory to the courts in this country, and it has been relaxed or modified more or less, to meet the injustice done by it to lessees in particular cases, as will be seen in the cases of *Driggs* v. *Dwight* (17 Wend., 72); *Giles* v. *O'Toole* (4 Barb., 261); *Chatterton* v. *Fox* (5 Duer, 64); and *Deane* v. *Roesler* (1 Hilton, 420): In England the rule is repudiated in two well considered cases. In *Williams* v. *Burrell* (1 Manning, Granger & Scott, 402; 50 Eng. Com. Law R., 401), it was held by the Court of Common Pleas, in a case referred to that court by the master of the rolls for its opinion, and upon a very elaborate argu-

ment, that the lessee, upon a covenant for quiet enjoyment, was entitled to recover the value of the term lost, as well as for mesne profits paid to the owner of the paramount title. The same question came again before that court in *Lock* v. *Furze* (19 J. Scott, N. S., 96, and 115 Eng. Com. Law, 94.) The case was very elaborately argued, and the English and American cases carefully reviewed, and the whole court, in opinions given by the four judges, sanctioned, reasserted and reaffirmed the rule held in *Williams* v. *Burrell, supra*, that a lessee who had been ejected by paramount title was entitled to recover upon a covenant for quiet enjoyment the value of the term which he had lost.

And it seems to me that the case of *Trull* v. *Granger & Dillaye* (4 Selden, 115), in principle commits this court to the same doctrine. It is true that, in that case, the plaintiff was not evicted, having never been in actual possession; but his landlord virtually expelled him from the demised premises by leasing them to another party and putting him in possession before the demise of the plaintiff took effect. The plaintiff recovered the value of his term and this court affirmed the judgment. The same principle is in effect also asserted in *Tracey* v. *The Albany Exchange Company* (3 Selden, 475). But in *Myers* v. *Burns* (35 N. Y., 272), the same principle is clearly asserted and adopted. In this case, in an action for rent on a lease, the defendant set up as counter claim a covenant of the landlord to keep the premises in repair, and alleged a loss of $700 damages occasioned by the loss of the use of four rooms, alleged to be untenantable for want of repairs. The jury found $300 damages for the loss of the use of said rooms. The principle asserted is in effect that the tenant, by the act of the landlord, had been virtually evicted from such rooms, and was, therefore, entitled to recover the value of the use of the same as of the loss of part of his term.

But within the principle asserted in this case, in *Trull* v. *Granger*, and in *Pumpelly* v. *Phelps*, the plaintiff was clearly entitled to recover the value of his term, and the direction at the trial was entirely correct. The plaintiff was clearly

evicted from the premises by the act, procurement and fault of the defendant. He expedited, if he did not instigate, the foreclosure of the mortgage, under which the eviction was had. He became a joint purchaser on the mortgage sale of the demised premises, and a joint petitioner with Dorsheimer for the writ of assistance under which the plaintiff was evicted from the said premises. It would be a gross wrong, if a landlord could thus conspire and assist in turning his tenant out of possession of demised premises, and the latter be limited, in his action upon his covenant for quiet possession, to mere nominal damages.

The point that the judge errred in deciding as matter of law that the defendant was liable to the measure of damages stated in the charge, and that, so far as the question depended upon the good faith of the defendant, it should have been submitted to the jury, is not, I think, well taken. The judge was not asked to submit this question to the jury, and the bad faith of the defendant in the foreclosure proceedings, I think, must have been assumed upon the undisputed facts in the case. I think, however, that the direction of the judge was clearly right as matter of law, and that the judgment should be affirmed.

All concurring for affirmance.

Judgment affirmed.