Daniels, J.
The plaintiff, as the daughter and heir-at-law of Cornelias Doris, deceased, has prosecuted this action against the defendants, to secure the *213 conveyance of a piece of land situated on the westerly side of Hudson Street in the city of New York. It was conveyed by her father, Cornelius Doris, to Henry *214 McGruckin, by a deed executed on or about February 17, 1858. The grantor in the deed died in July, 1858, and in support of the action by the plaintiff it was alleged that it was executed and delivered to McGruckin as security for a small debt owing to him and such further sums as should be advanced by him for the payment of incumbrances on the property, and taxes and assessments.
This was denied by the defendants in the action, and the claim was made in their behalf, that the intention of the deed was to convey the property to Mc-Gruckin, who entered into an agreement to reconvey it at the expiration of one year, provided he was reimbursed for moneys which should be advanced upon it, and any other sum owing to him from the grantor. It was also alleged that default had been made in complying with these terms, and that the grantee in the deed had afterwards acquired the absolute title to the property under foreclosure proceedings in which they were afterwards sold and conveyed to Michael *215 Cain, who-executed and delivered a deed of the premises to McGuckin. It was further insisted that the right of the plaintiff to maintain the action had been lost by the dismissal of a preceding suit brought by her against McGuckin and Gilbert E. Dorland.
The plaintiff was of the age of about seven years at the time of the decease of her father and commenced this action in the month of December, 1875, after she had attained the age of twenty-four years. The preceding suit was commenced by her in 1860. She was then in indigent, circumstances, and a guardian ad litem was appointed for her, and an attorney assigned to prosecute the action in her behalf as a poor person. That circumstance may account for the omission to bring the action to trial, for the proceedings which were taken in it disclose the fact that no trial of the issue was ever had, but in March, 1861, the complaint was dismissed in the absence of her attorney and. counsel. Judgment was entered upon the dismissal in June, 1865. In 1867, an application was made in her behalf to set aside the dismissal of the complaint; but upon the hearing of the motion it was denied, and it is this dismissal of the complaint and denial of the motion that has been relied upon as a bar to the present action. But the authorities cited in the opinion of the justice hearing and determining the action at special term are decisive against this defense. The denial of a motion made upon affidavits, without any investigation into the merits of the right relied upon, has not been considered by the courts to be a bar to an action brought by the defeated party afterwards for substantial relief. The denial of the application in this instance may very well, and probably did, proceed upon the delay intervening between the dismissal of the complaint and the application to set aside the default. It in no view involved any inquiry concerning the merits of the case, and was not *216 an adjudication upon them, but all that was decided was that the default of the plaintiff upon which her complaint was dismissed, should not be vacated or set aside. The decision related to a mere matter of practice, and in no way prevented her afterwards from commencing another action for the redress to which she deemed herself entitled (Mack v. Patchin, 29 How. 20, 29 ; affirmed, 42 N. Y. 167 ; Easton v. Pickersgill, 75 N. Y. 599).
The judgment dismissing the complaint was no greater obstacle legally standing in her way. There was no trial of the action, no consideration or determination of its merits, but simply because she failed to appear and bring the case to trial, it was dismissed. That, under the present system, has not either at law or in equity been considered a defense to a subsequent suit (Rosse v. Rust, &c., Johns. Ch. 300; Burwell v. Knight, 51 Barb. 267).
The case is therefore before this court upon its merits, as it was held to be at the special term, and they are required to be considered in the disposition of the appeals.
When the deed was taken by McGuckin for the property, it was encumbered by three mortgages, amounting in all to the sum of $8,000. There were also judgments against Doris, the grantor, in the aggregate amounting to about $893.50. Of these judgments, one had been recovered upon a note given by Doris to McGuckin. That amounted, with costs, to the sum of $107.31. It stood in the name of Gilbert E. Dorland, to whom the note, was delivered, to be sued by Arnold H. Wagner, who is claimed throughout to have acted in this and other transactions, as the agent and attorney of McGuckin.
At the time when the premises were conveyed to the latter, they were probably worth the sum of about $10,000. And while it has been insisted that he made *217 some payment to Doris on account of the conveyances, and Wagner as a witness stated that Doris had so admitted the fact to him, it is not probable that any such payment whatever was made by McGruckin for the property, for in proceedings which were taken on behalf of the plaintiff to ascertain whether a probable right of action existed in her favor for the recovery of the property, a reference was made in which McGruckin presented a voluntary statement as to his claims against the property, and to exhibit them, he presented a detailed account which, however, showed the payment of no money by him to Doris on account of the property. And it was found as a fact by the court at special term, upon evidence supporting that conclusion, that no such payment had been made by the grantee in the deed. He is to be held, therefore, as having received the property, subject alone to the encumbrances upon it, and he soon afterwards w?ent into the possession and enjoyed its control and management until he executed and delivered a deed of it to Mary Queripel, on June 1, 1868, for the sum of $20,000.
Neither of these encumbrances appears to have been paid by him, unless it might be the small judgment of $107.31 recovered by Dorland upon the note given by Doris to McGruckin. And that judgment was probably recovered in Dorland’s name for the benefit of McGruckin. For it was made to appear by the evidence of Wagner, who claimed to own the note, that supplementary proceedings taken by him for the collection of the judgment were dropped on the day when the examination was to have taken place, by reason of information received by him, that this deed had been made and delivered by Doris to McGruckin. And that probably would not have been done, as the deed would have been a violation of the order in the proceedings, *218 had it not been for the fact that McGuekin himself was really the owner of the judgment.
And that he probably was so, is fortified by the charges made in the account already referred to, for payments for examining Doris, and afterwards drawing an assignment of the judgment. These circumstances, together with the fact that Wagner at the time appears to have 'been acting as the attorney for McGuekin, sustain the inference that the latter owned the judgment, although it had been recovered and stood in the name of Dorland, and that it was extinguished and" in fact satisfied through the conveyance of the .property made by Doris. The other judgments were neither of them paid by McGuekin, but they were cut off as liens upon the property by a foreclosure of the third mortgage, subject to which it was conveyed. This mortgage also was foreclosed in the name of Dorland. Before the- suit was instituted an action had been commenced by Joseph D. Baldwin, who was then the owner of this and a larger mortgage upon the property, for the foreclosure of such mortgages. That suit was arranged through the intervention of Mr. Wagner, and discontinued on the 5th of September, 1859. He obtained from Baldwin an assignment of the third mortgage upon the property, securing the payment of the sum of thirteen hundred dollars to Dorland, and stated that Dorland had paid the money for the assignment. And that, in form, he probably did, but that he obtained the assignment of the mortgage to foreclose it, and in that manner secure the collection of his small judgment is neither credible nor probable. For the judgment itself,. as already observed, was most probably the property of McGuekin and satisfied by the deed, and what was designed to be accomplished by the assignment and foreclosure of the third mortgage was the promotion of the interests of the latter by a further confirmation of the title *219 claimed by him. This mortgage was assigned on the 8th of September 1859, and the action for its foreclosure was commenced on or about the 28th of the same month. The plaintiff was made a party to this action, and set forth by way of defense in her answer substantially the same facts relied upon to maintain this suit. But as they could not be considered and determined in an action for the foreclosure of the mortgage,x her answer was disregarded and a reference made to compute the amount due upon the mortgage. In the proceedings in the action Wagner was the active individual. He served the summons on the defendant McGuckin and other defendants in the action, and made proof, as the agent of the plaintiff, of the amount due and unpaid upon the mortgage. When the sale came to be made, Wagner was present and bid off the property for the sum of a thousand dollars in the name of Michael Cain, who, it is stated, refunded to Borland the amount paid by him for the mortgage, notwithstanding the fact that the purchase price of the property did not require that to be done. The sale under the judgment was made on the 10th of August, 1860, but the sheriff’s deed to Cain was not acknowledged until the 1st of December in that year. And on the day before that acknowledgment took place it is stated in the case that Cain executed and delivered a deed to McGuckin of the property, in consideration of the sum of fifteen hundred dollars. In the meantime, and until these deeds were executed, McGuckin remained in the possession of the property. Cain was not present at the sale, but Wagner bid off the property in his name, although he had not previously received any direct authority for that purpose. And he also, apparently acting for McGuckin, paid the interest upon the second mortgage on the property. Cain was a first cousin of McGuckin and the father-in-law of his executor, one of the defendants in this *220 action. From these facts it was concluded by the court at the special term that the assignment of the mortgage had been obtained, and its foreclosure secured, for the sole object of placing the title to the property absolutely in McGuckin, free from the obligations assumed by him to protect it by paying off the encumbrances. And the circumstances were such, together with those connected with the suit upon the note and the evidence that Wagner was the attorney of McGuckin, although that fact was not unqualifiedly conceded by him, as fully to warrant that conclusion. Taking the facts together that Borland had no real interest in the property or either of the mortgages, and no substantial advantage to be derived from the foreclosure, the acts of Wagner, by which the original suit brought by Baldwin was discontinued, and this mortgage in form assigned to his friend Borland, the manner in which the proceedings were carried on, and the final result by which the formal title was vested in a near relative of McGuckin, who remained all the while in the possession and control of 'the property, and received a deed of it from the nominal purchaser contemporaneous with that of the sheriff, there was no reasonable ground for doubting that the design of the foreclosure was to cut off the plaintiff’s interest in the property and prevent her from recovering it from McGuckin, the grantee in her father’s deed.
And as he had previously undertaken to protect the property by paying off the encumbrances upon it, it was a fraud upon the plaintiff’s rights to take the title to it in this manner. There is no doubt, as the cases cited by the counsel for the executor hold, that a person holding a mortgage upon real estate, or claiming title to it by deed, may fortify and protect his title by buying in other encumbrances upon the property. But they are a class of cases entirely inapplicable to the controversy between these parties. *221 For where the grantee in a deed made in this manner has taken upon himself the obligation to protect- the property for the benefit of the grantor, by paying off the encumbrances, he has assumed obligations entirely inconsistent with the right afterwards directly or indirectly to acquire the encumbrances, and through their foreclosure endeavor to obtain an absolute title for himself. He stood in the nature of a trustee whose duty it was to protect the property for another, and whose obligations to its owners were wholly inconsistent with the acquisition of the title in this manner. As to him and the executor claiming under him, the foreclosure and sale were fraudulent and entitled to no support in the judgment of a court of equity. The facts do not show that Cain was a purchaser of the property in good faith. In reality he did not buy it at all, but it was bid in and placed in his name by the person who at the time was evidently acting for Mc-Giuckin, and in the promotion of his interests. But even if Cain had been a purchaser of the property and had himself paid its purchase price when the title came back to MoGruckin, he held it subject to the same equitable rights as had been created under the original deed. When the estate was revested in him the original equities re-attached to it in his bands (1 Story Eq. Jur. [12th Ed.] § 410). To hold otherwise would enable a party desiring to defraud another effectually to do so under legal proceedings of a fictitious character.
The point is, therefore, fully presented whether McGluckin, received the deed by way of security for the repayment of the advances to be made by him including the judgment recovered by Borland, or subject to an obligation on the same terms to reconvey the property to Boris or his heir. The evidence of the witness Wagner upon this point was to the effect that the paper relied upon as a defeasance which was exe *222 cuted by McGuckin rendered the transaction a sale of the premises with a contract for their repurchase from McGuckin by Doris, while the answer of McGuckin himself in the preceding suit brought by the plaintiff to recover the property, substantially conceded the deed to him to have been executed for the purpose and by way of security. The following was the statement of McGuckin upon this subject.
Defendant admits “ that at the time of said conveyance the said property was about to be sold under a foreclosure of a mortgage, and that said Doris entered into an agreement with defendant to the effect that defendant was to pay the interest and costs claimed by the mortgagee and certain taxes and interest on two other mortgages ; and it was further agreed that said Doris should pay to said McGuckin all the sums of money this defendant had or should advance on account of said Doris, or on account of the maintaining and protecting said property with the interest thereon, and pay for defendant’s services collecting said rents and attending to said property, this defendant to account to said Doris for said rents in making up this defendant’s said charges and claims, and upon the payment of such balance due this defendant, this defendant was at any time before the 15th day of February'1859, to reconvey said property to said Doris.”
And it exhibited his understanding to be, that he in fact held the property as a security for what he should on account of Doris advance to relieve it from the encumbrance upon it. This was more than an ordinary admission; for the answer was verified by the person making it. It was his solemn statement under oath, that the title to the property had in this manner been placed in him, and as such it was equally as admissible against his executor, as it would have been against himself if he had survived and been a party defendant-in this action (Chadwick v. Fonner, 69 N. Y.404).
*223 Authorities have been referred to, indicating the facts usually to be shown to establish a deed absolute in its form to have been merely a mortgage. But there is no exacting or unyielding rule maintained even by the authorities as to the evidence required to prove the fact. All that is necessary is, that the proof shall clearly and satisfactorily maintain its existence, and that they do in this case. McGuckin had no interest whatever himself in the property. He paid nothing for it, but took it to hold and manage for the benefit of Doris. It was fairly .worth something beyond the encumbrances against it, and all that McGuckin stipulated to secure to himself will be enjoyed by himself and his executor, even though the latter shall be held legally liable to account for the proceeds of the property. The case is one where, under the principle mentioned in Conway v. Alexander, 7 Cranch, 218, a court of equity would lean strongly against the title relied upon in favor of the grantee, and would endeavor to preserve and maintain the equitable rights and interests of the heir of the grantor in the estate.
And that may very well be done, even though the instrument called a defeasance was accurately described by Wagner as a contract for the re-conveyance of the estate upon the payment of the amount advanced to extinguish the encumbrances upon it. For if that did provide that the amount should be refunded at the expiration of one year from the time when the deed was delivered, the strict observance of the time so designated was not made an essential part of the agreement. Neither was it so considered by McGuckin himself, for after the year had expired, he expressed himself in the statement made by him to the referee, to whom the application of the plaintiff for leave to sue as a poor person had been referred, to be willing to surrender his right to the property upon being reimbursed the advances then alleged to have been made. *224 And no proceedings whatever were at any time taken by him to extinguish the right of the plaintiff to a re-conveyance of the property, even if it was all she was entitled to insist upon. For, as has already been observed, those which were carried on for the foreclosure of the mortgage assigned to Borland cannot be allowed to have been effectual for that purpose.
Boris died before the year expired. The plaintiff was his sole and infant heir, and in her circumstances could not be expected or required to take effectual proceedings for the redemption of the property. Her disability continued until the year 1871, and, her final action to-vindicate and maintain her rights was commenced without unreasonable or fatal delay, after she had attained her majority. No such laches can be imputed to her as would forfeit her rights or interests in the property. And as time was neither made essential in the defeasance, nor insisted upon at any time by McGuckin himself, she was not deprived of her right to a specific performance of the defeasance as a contract to re-convey the property, by this intervening period of time. The rule upon this subject was stated in Hubbell v. Von Schoening, 49 N. Y. 326, to be that when time has hot been made essential and “ the delay . is excused, and the situation of the parties or of the property is not changed so that injury will result, and the party is reasonably vigilant, the court will relieve him from the consequences of the delay, and grant a specific performance.” “A party may be held to a strict performance as to time, and put in default for non-performance, that is, a default in law. And whether equity would relieve, would depend on circumstances. But to do this, the party seeking to put the other in default must not only be ready and willing to perform, but he must tender performance at the time, and demand performance from the other” {Id. 331). This McGuckin never did. He neither presented his account, *225 showing the rents and profits received by him, or the expenditures made by him, nor called upon the other party to fulfill the agreement by refunding any sum which might have become due to him for advances he had made. And without a statement of account including such items, he was not in a situation to insist upon a settlement of any claims which might be made by him, or a forfeiture of the right of the equitable owner of the property to receive the title. The same principle was considered again in Merchants’ Bank v. Thomson, 55 N. Y. 7, where the law was in very nearly the same language reasserted.
The rights of McGruckin in the property underwent no change. The case differed from that of an owner of real property entering into a contract for its sale and conveyance. There he might well be entitled to the advantages of its enhanced value accruing after the time when the vendee was required to fulfill the agreement and take the title.
For all purposes the vendee in that case would be the legal and equitable owner of the property, while in the present instance that was not. the case. His interest and the extent of his right was to be reimbursed for his advances, and upon that reimbursement to convey the title. It was not contemplated in either form of the arrangement that he was to profit by the enhanced value of the property, but that was, in fact, reserved for the benefit of the grantor and his heir. The transaction in this respect was the reverse of that to be found where the absolute owner of property has entered into an agreement for its sale and conveyance, for this grantee was only entitled to hold the property to protect him against loss of the moneys he should advance. "Whether he held the title as a mortgagee or subject to a contract for its re-conveyance, the rights of the parties were essentially the same. And as long as complete justice may be meted out to his estate by *226 reimbursing whatever advances he may have made with interest upon the amount, the plaintiff’s title to Jhe excess should be justly maintained by the judgment of the court, as that was done by the determination of the special term.
The proceedings before the referee under the application made on behalf of the plaintiff during her infancy to sue as a poor person were allowed to be given in evidence upon the trial. They included the testimony of Joseph C. Ashley, who is since deceased. These proceedings as well as this testimony were objected to as improper evidence in the case, and such they undoubtedly were. For McGruckin was not a party to those proceedings and was not, therefore, in a condition to cross-examine the witness Ashley. And where that right of cross-examination has not been enjoyed, the evidence of a deceased witness cannot be read against the party deprived of that right or those claiming under him in any subsequent portion of the proceedings. To entitle the former evidence to be read the opportunity for cross-examination must have been .afforded to the adverse party (1 Greenleaf on Evd. [7th Ed.] § 164; Jackson v. Bailey, 2 Johns. 17 ; White v. Kibling, 11 Johns. 128).
And if the action depended upon the weight or effect of this evidence or these proceedings, the judgment could not be maintained. But it does not, for the evidence given by Ashley upon the hearing before the referee stated the agreement which had been taken from McGruckin at the time when the deed was delivered, no more unfavorably to himself than he, Wagner, did in his evidence, or that he himself did in his sworn answer to the action brought in favor of the plaintiff as a poor person. It was cumulative evidence without really proving anything more than what was otherwise well established in the case.
As to the executor of McGruckin the right of the *227 plaintiff to maintain the action was well established by the evidence, and it rendered him accountable for the proceeds of the sale of this property by the testator to Mrs. Queripel.
The other defendants in the action are the devisees of this estate. They have in form appealed from the judgment, and their notice of appeal has been made a part of the case, but no points or argument have been presented in their favor, and there may be a reason for supposing that they do not intend to insist upon their appeal. But that cannot be determined against them without evidence, and there is no evidence of their intention to abandon the appeal taken by them.
It becomes necessary, therefore, for the complete disposition of the case, to consider whether their testatrix acquired a title to the property through her deed from McGruckin. She seems to have purchased the property in good faith and to have paid a large portion of its purchase price and secured the payment of the residue by her bond and mortgage. This was all that was required to secure to her the rights of a bona fide purchaser, unless she was chargeable with notice of the infirmities in the title of her grantor. No actual notice was proven to have been received by her, and she can be charged with no constructive notice from the preceding litigation concerning the title to the property. Before her purchase, the plaintiff’s first suit had been dismissed and the inference from that circumstance, if it had come to the knowledge of Mrs. Queripel would be that she had no right or interest in the property.
And the contrary could not be inferred from the mere fact that she had again asserted the same rights in her answer, in the Borland foreclosure suit. For in tracing title to the property this grantee would have been under no obligation whatever to look so far into the pleadings in the foreclosure suit as to have in *228 formed herself of the contents of this answer. All that she could be required or expected to do, would be to consult the judgment itself. And when it thereby appeared that the sale of the property had been regularly authorized and the title in that manner acquired by her grantor, that would have been the extreme limits of her obligation to proceed by way of searching or tracing the title. The allegation of the plaintiff’s rights in her answer in that action could under no well settled principle be held to be even constructive notice of this purchase, for she was not bound to consult the answer at the peril of receiving an infirm title.
Neither was she chargeable with notice because Wagner was himself acquainted with the infirmities in the title and the manner in which McGuckin had finally acquired it. For Wagner sustained no such relations to her as attorney or agent as rendered her chargeable with his knowledge. She employed another person in what she did-to obtain the title to the property, and only employed Wagner after the deed had been executed and delivered to her. She stood therefore in no such relation to either of the parties, or the preceding proceedings as rendered her chargeable with the infirmity of title as it had been vested in McGuckin As to her and her devisees, the admissions made by McGuckin in answer to the plaintiff’s preceding suit were not admissible. . Neither, herself nor her devisees were in any form parties to that proceeding or secured the right or opportunity to cross-examine the witness, and what he swore to therefore as to the contract with McGuckin could not be lawfully received as evidence against them. As to these devisees the judgment was unauthorized, and it should be so far modified as to be reversed in their favor, and a new trial directed with costs to abide the event, unless the plaintiff shall stipulate to dismiss the complaint as to these defendants. .If such a stipulation be given within twenty days after *229 notice of the decision, then the judgment should be modified by directing the executor of McGuckin to account for the proceeds of this property. And to that extent the hearing provided for by it should be had before a referee. But if the stipulation shall not be given then the further proceedings by way of an accounting will necessarily be deferred until the case is finally disposed of as to these additional defendants.
The order allowing the demand for relief in the complaint to be amended was entirely unobjectionable. The pleadings were well enough without it. The liability of the parties was not enlarged by its entry, but they were afterwards left practically for all the purposes of the action, as answers had been served, the same as they were before. As to this order there should therefore be an affirmance, but without costs to either party.
Davis, P. J., and Beady, J., concurred.