### AMERICAN BRAKE SHOE & FOUNDRY CO. v. NEW YORK RYS. CO. et al.

(Circuit Court of Appeals, Second Circuit. January 15, 1926.)

No. 148.

**1. Landlord and tenant ⟨⟩130(4)—Tenant evicted may, for breach of covenant of quiet enjoyment, recover for improvements required by lease.**

Tenant, evicted by superior title, having by the lease been required to make improvements costing "not less than $19,000," for which he was to be compensated at lease end, subject to deterioration at certain rate, and having made more expensive improvements, may, even under New York rule, for breach of implied covenant of quiet enjoyment, recover for the improvements, not exceeding amount required to be expended, as entering into the bargain.

**2. Receivers ⟨⟩163—No interest on claim for eviction of tenant after receiver appointed for insolvent landlord.**

Landlord having become insolvent, and receiver having been appointed for it, before tenant was evicted under superior title, tenant's claim for damages for breach of implied covenant of quiet enjoyment does not bear interest against the funds in hands of court.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the American Brake Shoe & Foundry Company against the New York Railways Company. From a final order adverse to the Sanitary Wet Wash Laundry Company, Inc., which filed a claim in the suit, it appeals. Reversed and remanded, with directions.

The suit above entitled is the usual creditor's bill, and resulted in the administration of the insolvent defendant's estate.

Some time before bill filed defendant Railways Company, being the owner of certain land on Manhattan Island, leased the same to Sanitary Company for the term of 21 years from December 5, 1917, at a rental, payable monthly in advance, of $3,500 per year. In the written lease Sanitary Company covenanted to make certain improvements to the leased premises; i. e., remodel and erect buildings according to plans and specifications to be approved by Railways Company, and to expend in so doing "not less than $19,000."

Further, the Sanitary Company covenanted to take (at the expiry of term) the premises for a renewal, also of 21 years, at the option of Railways Company. If a renewal was not made, Railways Company was to pay Sanitary Company one-half the then reproduction cost of the improvements made by tenant; but, if renewal was granted, then at the end of the second 21-year period the improvements would pass to Railways Company without any payment or compensation.

Sanitary Company spent more than $19,000 (viz. $35,000) in making the specified improvements. The premises, however, were subject to a corporate mortgage, made in 1912 by Railways Company to secure a series of bonds. When, on the filing of this bill, the insolvency of defendant appeared and receivers were appointed, said mortgage was foreclosed, and in 1920 Sanitary Company's lease was wiped out by the foreclosure sale.

Thereupon Sanitary Company filed a claim in this suit, demanding that it be allowed recovery against Railways Company estate for the $19,000 aforesaid and interest. The matter was heard on an agreement as to facts, substantially ut supra; Sanitary Company claiming as damages the above $19,000 "for breach of implied covenant of quiet enjoyment during the term of 21 years," in that it had been "barred and foreclosed of its lease" within a short time after execution thereof.

Admitting that there was an implied covenant as alleged, and a breach thereof, the court below held that the law prevented allowance of more than nominal damages. From order accordingly, entered by the receivers of defendant, Sanitary Company took this appeal.

Simon Sultan, of New York City, for appellant.

Cotton & Franklin, of New York City (J. A. Fowler, Jr., of New York City, of counsel), for receivers.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] This is a question of New York law, of which, however, the latest restatement known to us is our own decision in Thorley v. Pabst, 179 F. 338, 102 C. C. A. 522. Noyes, J., there concluded (page 345 [102 C. C. A. 529]) that the general rule is that a "tenant who has not paid in advance can, upon eviction by superior title, recover only nominal damages, and can recover nothing for the value of his lease or for improvements." There are certain exceptions duly enumerated, but the court below treated the claim at bar as if it were one for improvements, made not under the compulsion of a contract, but voluntarily, as is usual.

If nothing had been said in the lease about improvements, and they had been lawfully added to the land, only because the tenant was not contractually restrained from improving, the order under review would have been right; the case being on all fours with Matter of Strasburger, 132 N. Y. 128, 30 N. E. 379, because Sanitary Company did not "advance" any rent, and it is certainly liable for no mesne profits. But the agreed statement at bar presents facts not, so far as we know, exhibited in any New York report, and therefore, we think, requiring some investigation into the origin or basis of a rule confessedly prevailing in few jurisdictions, though not peculiar to New York. Thorley Case, supra, at page 345 (102 C. C. A. 522), quoting Reeves' Real Property.

An explanation of the New York rule given by Mr. Reeves, supra, is that the termination of the tenant's duty to pay rent is thought sufficiently to compensate him for the loss of his term; i. e., for a breach of the covenant of quiet enjoyment, which is always implied in the usual lease. Mack v. Patchin, 42 N. Y. 167, 1 Am. Rep. 506. But this cannot even yet be called legal reasoning; a priori it would be certain that a rule originating in the early days of American law was once justified by considerations far more formal than the business result above stated.

We think the origin of the New York rule is to be found in two decisions by Chancellor Kent, then Chief Justice—Staats v. Executors of Ten Eyck, 3 Caines, 112, 2 Am. Dec. 254, and Pitcher v. Livingston, 4 Johns. 1, 4 Am. Dec. 229. Both these cases grew out of sales of land, wherein the vendor had given warranty both of seizin and quiet enjoyment, and the vendee had been ejected by title paramount to that of the vendor.

It was shown by abundant citation of ancient law that upon a warrantia chartæ demandant could recover only the value of the land at the time the warranty was given, and this was applied to a warranty of seizin in the Staats Case, with the additional holding that, while the ejected vendee could not recover any increment in the value of the loss, he could recover, not only the consideration by him paid, but interest thereupon.

In the Pitcher Case the effort of an evicted vendee was to rely upon the covenant for or warranty of quiet enjoyment, and to recover the value of beneficial improvements placed upon the land during occupancy. This attempt to distinguish between the covenants for seizin and quiet enjoyment was disapproved; Kent, C. J., saying: "The covenant for quiet enjoyment respects the possession merely, and it would seem to be unreasonable and very inconsistent, for the plaintiff to recover under one covenant the, whole value of the estate, as it was intended to be conveyed, and under another covenant in the same deed distinct and increased damages, because he was not permitted to enjoy that estate."

Consequently, although an evicted vendee might recover upon either of the two covenants, he could not recover substantial damages on both; and since under the covenant of seizin he could recover no more than the consideration paid—i. e., the agreed value

of the land at the time of attempted sale—a reason was found for saying that he could recover no more than that under the covenant for quiet enjoyment.

In respect of improvements, the Chief Justice said: "The subject of the contract [of sale] was the land as it existed and was worth when the contract was made. The purchaser may have made the purchase under the expectation of a great rise in the value of the land, or of great improvements to be made by the application of his wealth or his labor. But such expectations must have been ·confined to one party only, and not have entered as an ingredient into the bargain."

It was declared repugnant "to the genius of our law" to oblige the seller, on the buyer's eviction, to refund, not only the price agreed upon, but "the expense of the meliorations made." . Therefore, since "a seller may ·be presumed at all times able to return the consideration which he actually received," and since that return is enough to satisfy the covenant of seizin, it must also be enough to satisfy the covenant for quiet enjoyment.

But since the covenant for quiet enjoyment goes to the possession only, and except in the rare cases of rent paid in advance a tenant enjoys a possession measured by the rent he has paid, and is almost never evicted when the landlord has advance rent in his pocket, the rule can be practically explained as Mr. Reeves has done it, although Kent, C. J., assuredly did not use such language in justifying it. The rule was applied to leases in Kinney v. Watts, 14 Wend. 38, and that a lease contains by implication a covenant of quiet enjoyment is admitted.

It is observable that, in formulating the rule as to damages for loss of improvements, the Chancellor used as the very basis thereof the assumption, perfectly sound in all but the exceptional case, that the expectation of gain ·through meliorations to be made by the tenant was "confined to one party only, and (could not) have *entered into the bargain.*"

This is the exceptional case, it was a part of the bargain enforced against tenant by landlord that the former should expend "at least $19,000" on improvements, for which the landlord agreed to compensate the tenant at lease end, subject to deterioration agreed upon as amounting to 100 per cent. in 42 years, or 2.3 per cent. per annum. But such compensation could never exceed $19,-000, because everything beyond that sum was a voluntary expenditure, and for improvements so produced there can be no recovery on eviction. Matter of Strasburger, supra.

The improvements as made at much greater cost than the obligatory $19,000 deteriorated, as agreed, less than 6 per cent. before eviction, wherefore appellant's loss was more than the amount which "entered into the bargain," and we perceive no reason, even under the New York rule, why that amount is not a proper unsecured claim against the insolvent defendant's estate.

[2] Appellant would be entitled, also, to interest from date of eviction, were it not for the insolvency of the landlord; but, as we gather from the record that the appointment of receivers preceded eviction, the claim cannot bear interest as against the funds in the hands of the court.

Order reversed, and cause remanded, with directions to enter an order in accord, with this opinion. Appellant will recover the costs of this appeal.