CROCKER *v.* HILL.

The intention of the parties, found upon competent evidence, governs the
   construction of a written lease.
A lessor covenanted to make all necessary repairs upon the outside of
   the buildings upon the demised premises upon notice to him; and
   there were mutual covenants that, if the buildings should be destroyed
   or made untenantable by fire, either party might terminate the lease
   upon notice to the other.   Upon the destruction of the buildings dur-
   ing the term, and a demand by the lessee upon the lessor to rebuild
   them, and a refusal to rebuild in a reasonable time, neither party giv-
   ing notice to terminate the lease, the lessee is liable for the damages
   in an action of covenant broken.

ACTION. for breach of the covenants of a lease.   April 13, 1873,
the defendant leased to the plaintiff the Phœnix hotel in Concord,
with the northerly half of the stable and other outbuildings con-
nected therewith, for the term of two years and eight months, and
covenanted to make all necessary repairs on the outside of the
buildings upon notice to him.   The plaintiff covenanted that he
would make all necessary inside repairs, keeping them in as good
repair as they then were, and leaving them in as good condition
at the end of the term, unavoidable casualties excepted.   There
were mutual covenants, that if the buildings should be destroyed or
be made untenantable by fire, the term should cease if either party
should so elect and notify the other.   The plaintiff occupied the
premises, except the stable, to the end of the term, paying the
stipulated rent, which was a percentage of the gross receipts.   The
stable was consumed by fire in May, 1873, after which time the

plaintiff did not occupy it.   Soon after the fire he notified the defendant to rebuild the stable.   The defendant did not rebuild the stable in a reasonable time, which is found to be six and a half months from the time of the fire.   He rebuilt it so as to be fit for use by July, 1875, and thereafter occupied it himself, or by a tenant.   He never offered it to the plaintiff, and the plaintiff, after notice to rebuild, made no request for it.   The plaintiff was given no opportunity to finish the inside of the stable.   The defendant excluded the plaintiff from the stable, understanding that he did not want it.   The plaintiff assented to the defendant's occupation of the stable, after it was rebuilt, understanding that he could not have it himself.   He would have occupied the stable had opportunity been given, and it had been rebuilt in a reasonable time. A referee found that the defendant was bound by the terms of the lease to rebuild the stable for the plaintiff's use in a reasonable time, and that a failure to do so was a breach of the covenant. Damages were assessed for the estimated profits of the stable from the time it should have been rebuilt at $1,104, less what it would have cost the plaintiff to have finished the inside, $654, making the sum awarded $450.   The plaintiff claims there should be no deduction on account of the expense of finishing the inside.

*Pike & Parsons* (with whom were *Page & Norris* and *Sanborn & Clark*), for the plaintiff.

*J. Y. Mugridge* and *Chase & Streeter*, for the defendant.

ALLEN, J.   By an ancient rule of construction, the defendant's covenant to make all necessary repairs on the outside of the buildings, without express exception of loss by fire or other unavoidable casualty, required him to construct the outside of the stable in place of the one destroyed in a reasonable time after notice.   *Earl of Chesterfield* v. *Bolton*, Comyns 627; *Bullock* v. *Dommitt*, 6 T. R. 650; *Brecknock* v. *Pritchard*, 6 T. R. 750; *Green* v. *Eales*, 2 Q. B. 225; *Myers* v. *Burns*, 35 N. Y. 269; *Leavitt* v. *Fletcher*, 10 Allen 121; Wood Landlord and Tenant 599, 600.   So far as this rule of construction can be regarded as a mere arbitrary and technical mode of interpretation, it has become relaxed, as working injustice and unnecessary hardship in many cases, and does not prevail.   In the construction of the covenants of a lease, as of other written instruments, the intention of the parties, to be gathered from the instrument itself, from their situation, and from the subject-matter of the contract, must control.   *Houghton* v. *Pattee*, 58 N. H. 326; *Morse* v. *Morse*, 58 N. H. 391; *Corwin* v. *Hood*, 58 N. H. 401; *Brown* v. *Bartlett*, 58 N. H. 511.

The defendant's covenant to make repairs was general and unqualified, and did not expressly exclude an agreement to restore the buildings in case of destruction by fire or other unavoidable

casualty. In the absence of such an exception, the provision for a notice to terminate the lease in case of a loss of the buildings by fire exhibits an intention to rebuild if the notice were not given. No notice to terminate the lease was given by either party. The plaintiff's demand for repairs according to the terms of the lease, and his continued occupancy of the remaining buildings after the fire, show an intention to continue the lease. Occupancy of the stable by the defendant, and continued occupancy of the other buildings by the plaintiff, in the absence of an agreement to that effect, show an exclusion of the plaintiff from a part of the leased premises. Having made a covenant, which required him to rebuild the stable within a reasonable time after the fire, and which he did not perform, and having failed to excuse himself for non-performance by giving the plaintiff seasonable notice to quit the premises, the defendant is liable for the damages occasioned by his breach of the covenant. The defendant cannot complain of the hardship imposed upon him of repairing a loss for which he was not responsible and in no fault; for it was a hardship assumed by himself in his covenant, and against which he might have contracted, or from the burden of which he might have escaped by giving the notice provided for to terminate the lease. *Walton* v. *Waterhouse*, 2 Saund. 422, *note; Dermott* v. *Jones*, 2 Wall. 1, 7, 8.

The damages for the breach of the covenant to make necessary repairs was the actual loss to the plaintiff by reason of the breach. He is entitled to recover such a sum as will place him in as good a position as he would have been in if the defendant had performed his covenant. *Smeed* v. *Foord*, 1 E. & E. 602; *Alder* v. *Keighley*, 15 M. & W. 117; *Dunlop* v. *Higgins*, 1 H. L. 381; *Robinson* v. *Harman*, 1 Exch. 855; *Mack* v. *Patchin*, 42 N. Y. 167; *Hexter* v. *Knox*, 63 N. Y. 561. The defendant would have performed his covenant if he had constructed the outside of the stable for the plaintiff's use in a reasonable time. The plaintiff's loss for being deprived of the use of the stable for the remainder of the term is found to be $1,104. This loss did not all arise from the breach of the defendant's covenant. Had he performed the covenant, the plaintiff could not have enjoyed the use of the building, nor received profit from it, without first reasonably finishing the inside at an outlay of $654. Though the defendant gave him no opportunity to do this, the performance of the defendant's covenant by finishing the outside of the building would have left the plaintiff in no position to enjoy the benefits of the stable until he should first incur the expense of finishing the inside. The position the plaintiff would have had by the performance of the defendant's covenant measures the limit of the plaintiff's loss by non-performance, and that was the total loss from deprivation of occupancy, diminished by the expense of doing what was necessary to occupancy, and what the plaintiff had covenanted to do, namely, to

finish the inside. Making this deduction, there remains $450 as the plaintiff's actual loss arising from the defendant's breach of covenant; and for that sum and interest there must be

*Judgment for the plaintiff.*

STANLEY, SMITH, and BLODGETT, JJ., did not sit: the others concurred.