BENTON, *Ex'r, v.* BENTON, *Ex'r, & a.*

B. by will gave his wife the use and income of his homestead for life ; also, "every article of household furniture in or on said premises, including piano, books, minerals, shells, and curiosities, and every article of personal property in and about said homestead, or wherever found belonging to my estate ;" also, "the dividends and income on all my railroad shares I may own at the time of my decease, and also the interest and income on all my government and other bonds which I may possess at the time of my decease ;" and after making sundry bequests to other persons, added a residuary clause as follows : "Lastly, after the decease of my said wife, Susan A., and in the final disposition of property, I hereby give and bequeath the rest, residue, and remainder of my estate, wherever found or however situated," to certain legatees named. *Held,* that neither the railroad shares and government bonds, nor cash on hand and promissory notes of which the testator died possessed, passed by the will to the wife, and that an inventory thereof should be returned to the probate court.

BILL IN EQUITY, by William P. Benton, one of the executors of the will of Colbee C. Benton, deceased, for the advice and direction of the court in regard to the following clauses in the will : "3. I also give and bequeath to my said wife, Susan A., every article of household furniture in and on said premises [the testator's homestead], including piano, books, minerals, shells, and curiosities, and every other article of personal property in and about said homestead, or wherever found belonging to my estate, meaning to convey said personal property to my said wife, Susan A., to be held by her in her own right undisturbed and without an invoice, so that she can dispose of any portion of it at any time, either by gift, or will, or otherwise, as she may desire."

"4. I give and bequeath to my said wife, Susan A., the dividends and income on all my railroad shares I may own at the time of my decease, and also the interest and income on all my government and other bonds which I may possess at the time of my decease, said dividends, interest, and income to be collected and appropriated by my said wife, Susan A., for her own use and benefit during her natural life. Provided said dividends, interest, and income shall not produce generous return, or said bonds and shares shall decrease in value, then I hereby direct my executors to dispose of such portions of said property as they may think judicious, and invest in other securities, or use such parts of the principal as may be necessary or desirable."

The will was holographic, and was written March 5, 1877. The testator died February 22, 1880. The will was presented for pro-

20*

bate and allowed March 10, 1880, and the plaintiff and Susan A.
Benton appointed executors thereof.   The testator had no issue
living at the date of the will or afterwards.   In the first clause, he
directs his executors to pay his debts and funeral charges.   By
the second clause, the widow takes a life estate in the homestead;
and by the eleventh clause, the remainder is devised to the First
Unitarian Society in Lebanon.   By the fifteenth clause, the testa-
tor's real estate in Huron, Michigan (being all his other real
estate), is devised to the plaintiff.   By the other clauses of the
will, except the third, fourth, and last, legacies amounting to $7,850
are bequeathed to various legatees, payable upon the decease of
the widow of the testator, and legacies amounting to $1,700 are
given to various legatees, payable during her life.   The residuary
clause is as follows:   "Lastly, after the decease of my said wife,
Susan A., and in the final disposition of property, I hereby give
and bequeath the rest, residue, and remainder of my estate, wher-
ever found or however situated, or any property reverting to my
estate in consequence of a non-compliance with the conditions of
some of my bequests, to my brothers, nephews, nieces, and their
wives, hereinbefore named; and I hereby direct my surviving
executor, after paying all debts, costs, and expenses of administra-
tion, to distribute all my estate found and remaining in his said
executor's hands, to my said relations above referred to in a pro-
portion corresponding with the sums already bequeathed under the
sixth paragraph."

The testator owed no debts to any considerable amount at his
decease.   His personal estate, besides household furniture, &c.,
mentioned in the third clause, consisted of two hundred and two
shares of railroad stock worth more than their par value, one U. S.
bond for $1,000, and one share of bank stock worth more than its
par value, promissory notes to the amount of $1,720, and cash on
hand or on deposit to the amount of $3,518.14.   The widow claims
the income of the railroad shares and bond under the fourth clause,
and the principal or so much as may be necessary in the contin-
gency named in that clause.   As to this claim there is no conten-
tion.   Under the third clause she claims the bank share, notes, and
cash, and the residuary legatees also claim the same under the last
clause in the will.

The foregoing facts are admitted.   The plaintiff asks the court to
determine (1) what interest Susan A. takes in the estate under
the third clause of the will, and under the whole instrument; and
(2) of what portion of the estate an inventory should be filed.

*W. H. Cotton (Shirley & Stone* with him), for the plaintiff.
The widow claims to take all the personal property under the third
clause, subject to the several bequests which follow; that is, she
claims that she is a residuary legatee.   The will, under this con-
struction, is full of repugnancies and absurdities.   If she took this

property by the third clause, the fourth clause is useless. If she has any right under the fourth clause to the principal except in the contingency named, it is the right of a childless woman to receive between $20,000 and $30,000 after her death. The sanity of the testator might well be doubted if he devised away the bulk of his property with a proviso that the devisee should not take it until after her death.

When general and specific expressions stand immediately associated together, the general terms are sometimes restrained to articles *ejusdem generis.* 1 Jarm. Wills 605. The context in the third clause answers these conditions in an unusual degree. The testator begins the description of the property, which he intends to dispose of by this clause, with the use of the general term "household furniture." There is an evident desire throughout to give to the wife everything which had made a part of their home life and daily associations. In furtherance of this purpose he adds to the general description a specification of " piano, books, minerals, shells, and curiosities," " including " these in the term "household furniture," and in close connection with these things, peculiarly pertaining to home and its ornamentation, as a part of the same thought, " every article of personal property in and about said homestead, or wherever found." Now the specific words could not to the testator's mind—of which this will is the mirror—add anything to the range of the bequest, if he understood that the general terms which he embodied in the clause covered the entire personal property. They would have been meaningless and useless verbiage. If he intended to give his wife all the property, he would have said so without any specific enumeration. It would seem clear, from a view of the entire clause, that he used the term " every article of personal property," &c., in the limited sense of *ejusdem generis. Timewell* v. *Perkins,* 2 Atk. 103, 104; *Hutchinson* v. *Pough,* 40 L. T. N. S. 289; *Dole* v. *Johnson,* 3 Allen 364; *Johnson* v. *Goss,* 128 Mass. 433. It is commonly considered that this construction is favored by the circumstance that specific or pecuniary legacies are given by the will to the same or other parties. 1 Jarm. Wills 606; *Rawlings* v. *Jennings,* 13 Ves. 39. This will is full of this kind of confirmation of the restricted construction of the third clause.

The fourth clause gives the wife the use and income of his railroad stocks, government and other bonds, during her natural life, this species of property making at least five sixths of the entire personal estate. The principal sum is not to be impaired by her if the interest and income is sufficient to support her in a generous manner, and then only by the authority of both executors. This is a most significant provision. It shows that the testator, while desiring to do everything that a man ought for his wife, foresaw the danger to the other objects of his bounty, and so prohibited her from trenching upon the principal without the consent of the

other executor. The testator then proceeds to give to some thirty or more other beneficiaries under the will the sum of $9,550 in the eight succeeding clauses, exclusive of the eleventh and fifteenth, which relate to the real estate. The repugnancy is not only so manifest, but also so general—eight independent clauses, reiterating eight times over the real intention of the testator, the real plan of disposition which occupied his mind at the precise time—that it cannot be argued that he intended to dispose of his whole personal estate to the wife in the third clause, and overlooked, or forgot, his intention in the subsequent provisions. This argument seems to be clinched and riveted when there is a general residuary clause such as appears in this case. The wording of this clause is quite significant: " Lastly, after the decease of my said wife, Susan A., and in the final disposition of property," &c. Final disposition of what property?

The real estate is finally disposed of by the second, eleventh, and fifteenth clauses of the will beyond any question. · Under the defendant's construction, the personal estate is already finally disposed of by the third clause, and the others preceding the residuary clause. What was then left for this residuary disposition, very comprehensive in its terms and imposing in its appearance, to operate upon? Why the use of the term " final," as though he considered that he had, up to that point, made no final disposition of his personal estate? Why a residuary clause at all, if the wife was intended as residuary legatee?

The following represents the scheme in the testator's mind, if the defendant's construction is adopted: 1. The entire personal property is given to Susan A. absolutely. 2. The use and income only of the same property, or about five sixths of it, is given to her for the term of her natural life. 3. One fourth, or nearly one third, of the same property is given to thirty other legatees in succeeding clauses. 4. The residue of the estate, which has already been exhausted twice, is given to the nephews and neices as a final disposition of the testator's estate. By the residuary clause, he meant something beneficial to the donees. *Wallace* v. *Wallace*, 23 N. H. 149 ; *Perkins* v. *Mathes*, 49 N. H. 107.

In the third clause he provides expressly that whatever the widow takes under that provision is to be hers in such way that she can hold it without an invoice, and dispose of it as she may desire. He did not intend this to apply to the entire personal estate or to the general residue, for that would make the residuary clause an empty thing.

*C. A. Dole,* for Susan A. Benton. If Mrs. Benton does not take the $3,500 and bank share, under the third clause, then it remains in the hands of the executors until her decease, for it is not otherwise bequeathed, as the residuary clause takes effect only upon her decease. Now, taking the third clause separately, what

is bequeathed by it? The word "article" means part, portion, or item of a whole. "The fundamental idea of an article is that of an object comprising some integral part of a complex whole." See Worcester's Dict. The testator uses the word in that sense when he says "every article of household furniture," meaning every item or thing that goes to make up or can be classed under the head of household furniture. He then seems to have had some doubt as to whether certain things would be classed under that head, and therefore adds, "including piano, books," &c Then he further adds, "and every other article of personal property, in, on, and about said homestead, or wherever found, belonging to my estate."

The words "every other" and "or wherever found belonging to my estate," remove any limitation as to character or locality. And substituting the above definition of article, the clause would read, "and every other part or portion of the property in, on, or about said homestead, or wherever found, that constitutes my personal estate." A person not a lawyer, and not familiar with the many nice and discriminating decisions, giving construction to particular words when used in a will, would rarely have been as fortunate as the testator in his choice of language covering all his personal estate. So we say the third clause, taken separately, is sufficiently definite and intelligible ; and we say the same as to the fourth and fifth, ninth, thirteenth, fourteenth, and other clauses of the will, and these last specified clauses are contradictory to the third clause. This brings the case under the rule of construction where there is "repugnancy or contradiction between the several parts of a will, though each part taken separately is sufficiently definite and intelligible." It is an established rule "that where two clauses or gifts are irreconcilable, so that they cannot possibly stand together, the clause or gift which is posterior in local position shall prevail, the subsequent word being considered to denote a subsequent intention. * * * If a testator in one part of his will gives to a person an estate of inheritance in lands, or an absolute estate in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a life interest only, the prior gift is restricted accordingly." 1 Jarm. Wills 472.

By this rule the absolute gift by the third clause, so far as it relates to the railroad shares and bond, is restricted by the fourth clause to a life interest. "But the rule which sacrifices the former of several contradictory clauses is never applied, but on failure of every attempt to give the whole such a construction as will render every part of it effective. In the attainment of this object the local order of the limitations is disregarded, if it be possible, by the transposition of them, to deduce a consistent disposition from the entire will. * * * So, where a testator, after devising the whole of his estate to A, devises Blackacre to B. The latter devise will be read as an exception out of the first, as if he had said, I give

Blackacre to B, and subject thereto, all my estate, or the residue of my estate, to A." 1 Jarm. Wills 475.

Construing the will in question in accordance with the above rules, and the examples given by the author under them, it would be read as though the third clause were transposed and placed after the fifteenth; in other words, the third clause would give Mrs. Benton all the personal estate restricted by or subject to the subsequent clauses; that is, she would take all the personal estate, except the railroad shares and bond, and the amounts covered by the bequests which were to be paid prior to her decease. And this construction under the rules comports with the true intention of the testator, as gathered from the whole will and from the facts stated in the case.

It is evident that the testator supposed he had fully disposed of all his personal estate, by the clauses preceding the residuary, except his railroad stock and bond, and these he considered good and safe investments, so much so that while he wished to provide for Mrs. Benton's comfortable and generous support through the income therefrom, he with much care provided that these investments should not be changed unless they failed to produce a generous return, or decreased in value, when he directed his executors to judiciously make the change, "or use such parts of the principal as may be necessary or desirable." If he had understood that there was any of his personal estate undisposed of, certainly if to the amount of $3,500, he would have first exhausted that, to make up the generous support of his wife, before disturbing his safe investments. It will be observed that the amount of the particular bequests to be paid upon the decease of Mrs. Benton is $7,850, the par value of the railroad stock and bond is about $21,000, so there could be no occasion for holding the $3,500 and bank share, nor indeed any sum in reserve, to provide for the full payment of said sum of $7,850.

*W. H. Cotton* and *Shirley & Stone*, for the plaintiff, in reply. The doctrine of *ejusdem generis* applies to the third clause, or it does not. If it does, the only inquiry is, Can money due on promissory notes, cash on deposit or on hand, and bank stock, be classed as household furniture or in the nature of it? By no possible construction can this portion of the estate be reached except the broad one, which would convey all of the personal estate as well. It does not follow, because $3,500 and the bank share are not particularly disposed of, that Mrs. Benton takes it. One of the purposes of a residuary clause is to rake after, and take in all property that preceding provisions—logically or locally preceding—have left undisposed of. Such a clause operates upon all of the personal estate of which the testator died possessed. And this is so, even though a residuary bequest, by the failure of other provisions, becomes a gift of the whole. 1 Jarm. Wills 762.

It would seem by its wording that the testator understood the effect of this clause in his own case to be what we claim. He bequeaths "the rest, residue, and remainder of my estate, wherever found and however situate," and further on is an independent direction to the surviving executor to distribute "all my estate found and remaining in said executor's hands," to certain parties, in certain proportions. We say that not Mrs. Benton, but the residuary legatees are the parties to glean the field and take everything which has not been explicitly given to other legatees. The third clause cannot be enlarged to take in this money and bank share without putting upon it just that broad construction which would make Mrs. Benton sole residuary legatee, and entirely ignore the residuary clause, which is the most consistent part of the whole document.

SMITH, J.   Mrs. Benton takes a life estate in the homestead under the second clause of the will, and the income for life of the bond and railroad shares under the fourth clause; and, in the contingency named in the fourth clause, the principal, or so much as may be necessary for her use. As to thus much there is no controversy. Neither the language of the fourth clause, nor anything in the testator's circumstances, shows that he intended to include the bank share, notes, or money in that clause. The mention of railroad shares tends to exclude bank shares. There is no evidence that he intended to include the bank share under the term "bond." If he had intended to include the bank share in the fourth clause, he would naturally have mentioned it in connection with the railroad shares. Neither money nor notes are bonds or shares, within the meaning of the will.

The question then is, Are the notes, money, and bank share included in the third clause? They are personal property, and might pass as such under this part of the will, if such was the intention of the testator. He bequeaths "every article of household furniture in or on said premises, including piano, books, minerals, shells, and curiosities." Whether a piano is household furniture is a question of fact. *Sumner* v. *Blakslee*, 59 N. H. 242. Hence, to remove any doubt as to his intention, the testator mentioned it, and he probably mentioned books, minerals, shells, and curiosities, because he thought they might not pass as "furniture." But the testator added, "and every other article of personal property in and about said homestead, or wherever found, belonging to my estate." This language would include family stores, carriages, live stock, farming tools, and other chattels, in addition to those previously mentioned.

The rule *ejusdem generis*, so far as it aids in the construction of this will, forbids the construction contended for by Mrs. Benton. Ordinarily it limits the meaning of general words to things of the same class as those enumerated under them. 1 Jarm. Wills

716; *Sumner* v. *Blakslee, supra.* The testator's careful use of language in the disposition of his household goods and other chattels, probably of much less value than the money, bank share, and notes, is strong evidence that he would not have left his intention as to this portion of his estate (of the value of more than $5,000) to be inferred from such terms as "every other article of personal property in and about said homestead, or wherever found." No satisfactory reason appears why he should mention books, minerals, shells, and curiosities, which would pass under the general description used, and omit to mention the bank share, money, and notes.

The construction contended for by the residuary legatees is strengthened by the fact that legacies to the amount of $1,700 are payable during the life of Mrs. Benton. If the construction contended for by her is correct, there is no estate undisposed of by the will from which those legacies, or the debts, expenses of administration, or funeral charges, can be paid during her life. Our conclusion is, that she does not take the bank share, money, or notes, under the third or fourth clauses of the will. This part of the estate goes to the residuary legatees upon the final settlement of the estate, after the death of Mrs. Benton, subject to the payment of the specific legacies, debts, &c. Under the third clause she takes only the household furniture, piano, books, minerals, shells, curiosities, and other chattels not otherwise disposed of by the will. She should join with her co-executor in returning an inventory of all the estate, except what she takes under the third clause.

*Case discharged.*

BLODGETT, J., did not sit: the others concurred.