Rockingham, }
June, 1894. }

## Trustees of Phillips Exeter Academy *v.* New Parish in Exeter.

Under a grant by an academy to a parish, of a meeting-house, upon condition that the grantees permit the grantors to make use of the house for "public exhibitions and other purposes," the grantors are not entitled to its use for daily morning prayers or other ordinary school exercises.

Bill in Equity, to determine the rights of the parties in a meeting-house. Facts agreed. The plaintiffs were incorporated April 3, 1781, for the purpose of educating youth and promoting their piety and virtue. The defendants were incorporated September 18, 1755, for "the maintenance of the minister of the gospel and support of the public worship amongst themselves"; and were authorized to raise money by taxation for the purpose. The plaintiffs, in consideration of one dollar and "other considerations expressed in the condition" of the deed, conveyed to the defendants, August 20, 1823, a lot of land in Exeter, with the following condition : "*Provided*, always, and this deed is on this condition, that the New Parish aforesaid shall completely finish the meeting-house now erected on the premises; that they shall improve the same, and all other meeting-houses that may hereafter be built by them on the premises, for religious worship of the Congregational order, and for no other; that they shall provide for the students in the academy aforesaid, and forever retain for the use of said students, as many seats as may be necessary for their accommodation, free from all charge or expense to said trustees, or said students, their parents or guardians; that they shall permit said trustees to use said house for public exhibitions and other purposes at all times when requested to do so; and that the premises shall revert to said trustees on the breach, neglect, or non-performance of all or any of the conditions aforesaid." The defendants entered under the deed, finished the meeting-house mentioned therein, and have ever since used it for "religious worship of the Congregational order," and provided therein seats for the plaintiffs' students. Ever since the foundation of the academy, with the exception of two intervals, morning prayers have been held daily in a great room, or chapel, in a building of the plaintiffs located upon an adjoining lot, which the students were required to attend.

In 1891, the plaintiffs requested the defendants to permit them to use the meeting-house for morning prayers, but the defendants declined. The plaintiffs claim the right to use it for that purpose and for other purposes that are not inconsistent with the

sacred character of the house or with the defendants' right to use it for religious worship.

*Arthur O. Fuller* and *William L. Foster*, for the plaintiffs.

*William P. Chadwick* and *Frink & Batchelder*, for the defendants.

CHASE, J.    The objection that the question raised is not properly before the court (*Greeley* v. *Nashua*, 62 N. H. 166) is not taken.    Both parties desire an early determination of the nature and extent of the plaintiffs' rights under the condition of the deed.    The question is upon the meaning of the words, " other purposes."    Although a question of law, it is to be determined like one of fact, by the weight of the evidence.    The terms of the deed, the situation of the parties, and the subject matter of the contract are competent evidence.    *Crocker* v. *Hill*, 61 N. H. 345, 346; *Hurd* v. *Dunsmore*, 63 N. H. 171, 172.

It appears from the defendants' charter that the object of their incorporation was " the maintenance of the minister of the gospel and support of the public worship amongst themselves."    They were authorized to raise money by taxation for the purpose. The lot of land on which the meeting-house stands was conveyed to them by the plaintiffs in furtherance of this object.    A part of the consideration for the conveyance was the defendants' undertaking to finish the meeting-house already erected upon the lot, and to improve it and all meeting-houses subsequently built thereon by them, " for religious worship of the Congregational order, and for no other"; to provide and forever retain as many seats in the house as might be necessary for the use and accommodation of the students attending the plaintiffs' academy, free of expense to the students and the plaintiffs; and to permit the plaintiffs " to use said house for public exhibitions and other purposes at all times when requested to do so."    This shows that, although the words " other purposes" are sufficiently broad to include any purpose to which the building could be lawfully put, they were here used in a restricted sense, and were not intended to include any purpose that would interfere or be inconsistent with the use of the house by parishioners and students for public religious worship.    A more comprehensive meaning is inconsistent with the object for which the defendants exist as a corporation, and in furtherance of which the lot of land was conveyed to them by the plaintiffs.

The language is, " public exhibitions and other purposes," a specific designation followed by a general one.    The relation and connection of the words naturally raise an inference that the purposes referred to in general terms are similar in character to the one specified.    This form of expression is common when the

unspecified particulars intended are similar to those enumerated. *Corey* v. *Bath*, 35 N. H. 530, 538 ; *Narramore* v. *Clark*, 63 N. H. 166, 167 ; *Benton* v. *Benton*, 63 N. H. 289, 295 ; *Bills* v. *Putnam*, 64 N. H. 554, 561, 562. If the purposes intended were general, there was no occasion for the specification. Their limitation is shown by the purpose particularly mentioned. Public exhibitions of schools consist of rhetorical and literary exercises by the students. Generally, the exercises are of such character that they may be given in a meeting-house without shock to the religious sensibilities of those who worship there. A larger audience room is needed for them than for the accommodation of students in the ordinary exercises of the school. They require the use of the house only for a brief time at long intervals, and are unlikely to interfere with the usual religious meetings. The plaintiffs are entitled to have the use of the house for other similar purposes, that is, purposes which require its use only occasionally and temporarily, and for which a larger audience room than any in the academy buildings is necessary,— purposes that may be served without changing the building from its distinctive character as a meeting-house to that of a school chapel or recitation hall.

Daily morning prayers are not of this character. They are designed for the students, not for the public. They are school exercises. At the date of the deed and for more than forty years before, they had been held in a great room, or chapel, in the plaintiffs' buildings. If the intention was that the meeting-house should be used for them, it would have been natural to clearly express the intention in the contract. The right to such use would be of more importance to the plaintiffs, and cause a greater incumbrance upon the defendants' title, than the right to hold public exhibitions in the house, or any other right secured to the plaintiffs by the deed. Such use would tend to disarrange the furnishings of the house designed for use at religious meetings. It would subject the house to divided care and management, and be likely to cause friction and controversy.

The plaintiffs' students have the right to attend the religious meetings held in the meeting-house free of expense, and the plaintiffs have the right to use the house for public school exhibitions and other similar purposes, but not for daily morning prayers or other regular exercises of the school. There should be a decree in accordance with these views.

*Case discharged.*

All concurred.