Sullivan, }
Dec. 4, 1923. }

## STATE *v.* OCTAVE NADEAU.

Under Laws 1919, *c.* 99, *s.* 6, a motor vehicle used in the transportation and possession of liquors prohibited by Laws 1919, *c.* 99, *s.* 4, is not forfeitable as "paraphernalia used in such illegal keeping."

LIBEL, for the forfeiture of a motor vehicle under Laws 1919, *c.* 99, *s.* 6. The defendant had pleaded guilty of violation of the law relating to intoxicating liquor. It is understood from the arguments that such plea was upon a complaint for possessing and transporting liquors prohibited by section 4. The question whether the motor vehicle was paraphernalia within the meaning of section 6 was transferred without a ruling by *Kivel,* C. J.

*Henry N. Hurd,* solicitor (by brief and orally), for the state.

*Louis A. Maxson* (by brief and orally), for the defendant.

SNOW, J. Laws 1919, *c.* 99 is an amendment of Laws 1917, *c.* 147. When simultaneous reference to both statutes is deemed necessary, the numbers of the amended sections will be inserted in brackets. Laws 1919, *c.* 99, *s.* 3 [19] provides for the punishment by fine and imprisonment of any person who, not being authorized by law, "shall sell, or keep for sale, any intoxicating liquor." Section 4 [20] provides that "the procuring, possessing, furnishing, giving away or transporting intoxicating liquor . . . , and any shift or device to evade the provisions of any law now or hereafter in force, in relation to intoxicating liquor are prohibited, and the penalties for a violation of any of the provisions of this section shall be the same as in the case of selling or keeping for sale intoxicating liquor." The claim to forfeiture is based upon section 6 [34], which enacts that "any liquor kept for sale in violation of the provisions of this act, together with the casks, bottles or other paraphernalia used in such illegal keeping, shall be subject to seizure" and "may be adjudged forfeited."

The position of the state in this case and in *State* v. *Melanson, ante,* 160, which will be considered herewith, is first, that section 6 was designed to provide for the seizure and disposition of liquor where conviction has been had under section 4, as well as where

conviction has been had under section 3; and second, whether or not so designed, that nevertheless the language of section 6 is sufficiently broad to authorize the forfeiture of any vehicle in which liquor was being kept when seized.

The first position is predicated upon the language of section 4 that the "penalties" there imposed "shall be the same as in the case of selling or keeping for sale." The history of sections 3 and 4 in connection with the history of the correlative sections, sections 6 and 10, hereinafter considered, shows that the word penalties used in section 4 clearly refers to the fines and imprisonments specifically enumerated in section 3 immediately preceding.

If, however, it were conceded that section 6 was intended to apply when there has been conviction under section 4, it would not help the plaintiff unless the terms of section 6 are broad enough to include a motor vehicle. This brings us to the question specifically reserved, namely, whether paraphernalia as there used was intended to include such a vehicle. This word was used at common law to designate the articles which a bride brought with her at her marriage or which the wife possessed beyond her dower, and hence the word came to include appendages; ornaments; trappings. — Webster's Dict. (1850, 1874); Worcester's Dict. (1868). In its technical application and according to its earlier popular use, therefore, the word connotes articles appendant or appurtenant to a particular status, order or calling. That the word in its non-technical sense still retains the idea of pertinence or appendance is clear from the definitions and illustrated use of the word by the later lexicographers, viz., miscellaneous articles of equipment or adornment; appendages; belongings; such as "the paraphernalia of an invalid," — Standard Dict. (1895); furnishings or apparatus; articles of equipment, as the "paraphernalia of a circus"; "equestrian paraphernalia," — Webster's New International Dict. (1910); "also the articles that compose an apparatus, outfit or equipment; the mechanical accessories of any function or complex scheme; appointments or appurtenances in general," — Murray's New English Dict. (1905). It is not claimed that the word has acquired any special meaning with relation to the business of selling or transporting intoxicating liquors or that it is customarily employed to describe the instrumentalities used therein. The state, relying upon the later authorities, takes the position that the word has come, sometimes, to have a meaning synonymous with the words equipment or apparatus, irrespective of the pertinence thereof to any particular business. It is claimed

in argument that in this sense it is an appropriate term, when applied either to the illegal keeping for sale or to the illegal transportation of intoxicating liquors, to describe any tool, implement, utensil, carrier, instrumentality, appliance or apparatus of which the offender was making use when he was violating the law, including a motor vehicle in which the liquor was kept or transported.

If it be conceded that the word is susceptible of such an interpretation, the question then arises whether the legislature used the term in such enlarged and unrelated sense, or according to its more common acceptation signifying the instrumentalities usually pertaining to or employed in the traffic inveighed against, namely, illegal keeping for sale. "The construction of a statute, as of any written document, is the ascertainment of the meaning of the language to those using it." *Opinion of the Justices*, 72 N. H. 605, 607. The question is, what did the word mean to the members of the legislature of 1919, who introduced it into the statute. *Glover* v. *Baker*, 76 N. H. 393, 407. The journals of the proceedings of the legislature are public records "intended to furnish the courts and the public with the means of ascertaining what was actually done in and by each branch thereof." *Opinion of the Justices*, 35 N. H. 579; *Opinion of the Justices*, 52 N. H. 622, 624; *Wyatt* v. *Board of Equalization*, 74 N. H. 552, 558, 583; *Opinion of the Justices*, 76 N. H. 601.

The essential facts in the history of the bill, resulting in Laws 1919, c. 99, as disclosed by the journals, appear to be conceded in argument. The bill was first presented to the house by the committee on liquor laws, was recommitted, and after material changes was reported in a new draft, in which form it passed the house. Further material amendments were made in the senate, and the act thus amended was adopted by the house. The changes in the wording during this process of enactment afford strong, if not conclusive evidence, that the legislature did not intend by the use of the words in section 6 [34], "casks, bottles and other paraphernalia," to include motor vehicles, used either in transportation or in keeping for sale. Italics will be used to distinguish the language more material to the discussion.

Laws 1917, c. 147, s. 34 provided "Any intoxicating liquor kept for sale in violation of law, with the *casks, bottles and vessels containing the same or used in the sale thereof*, may be seized . . . and upon due proceedings may be adjudged forfeited; . . ."

The original draft of the house bill proposing amendment to this

section, as introduced in the legislature of 1919, read: "Any intoxicating liquor in the possession of any person or kept, in storage, or for sale in any place, or in transit, in violation of any law now or hereafter in force, with the *casks, cases, bottles and vessels containing the same, and any other articles used in connection with the illegal possession, storage, transportation or sale of such intoxicating liquor,* may be seized . . . and upon due proceedings may be adjudged forfeited . . ." After providing for the destruction or sale of the forfeited liquor the bill proceeded: "The court shall also make an order for the destruction, or sale for the benefit of the county, of the *casks, cases, bottles, or other containers, or any articles used in connection with the illegal possession, storage, transportation or sale of such intoxicating liquors.*"

As reported in a new draft and finally enacted as Laws 1919, c. 99, s. 6 [34], this section reads: "Any liquor kept for sale in violation of the provisions of this act, together with the *casks, bottles or other paraphernalia used in such illegal keeping,* shall be subject to seizure . . . and upon due proceedings may be adjudged forfeited. Upon a decree of forfeiture, *the property* may be ordered destroyed, or it may be ordered sold in accordance with the decree of the court. . . ."

It is contended in behalf of the state that the modifications in the act from the original draft were not intended to curtail the subjective or remedial scope of the proposed amendment but that the changes were made merely for the sake of terseness and better rhetorical form. This view cannot be adopted. The original draft was a definite proposal to subject to forfeiture "any other articles" (that is, other than casks, cases, bottles and vessels) used in connection with "illegal possession, storage, transportation" of intoxicating liquors, as well as such articles used in keeping for sale. If it could be held that the words "any other articles" were intended to extend beyond the general class just previously enumerated, to include for instance an automobile, the further changes made during the process of enactment amounted to an express rejection of the proposal to deal in section 6 [34] with the subject of transportation or with possession or storage so far as distinguishable from keeping for sale. Having eliminated transportation from the matter in hand, and having reduced the forfeitable liquors to those illegally "kept for sale," it is improbable that the legislature intended by the words "casks, bottles or other paraphernalia used in such illegal keeping" to include utensils peculiar to transportation as distinguished from keeping for sale.

That section 6 [34] was intended, according to its express terms, to deal solely with the forfeiture of articles used in the illegal keeping for sale is evident, moreover, since the forfeiture of articles used in transportation is adequately dealt with in a later section, section 10 [57]. The latter section had under the old law provided for forfeiture of liquors only if they were illegally transported in violation of section 9 [56], which related solely to the business of transportation and express. The amended act, section 10 [57], was enlarged to include liquor transported "in violation of the provisions of this act." Section 4 [20] was the only provision in the act, other than section 9 [56], to which it could apply. The conclusion follows that this amendment in section 10 [57] was made to meet the changes in section 4 [20] in so far as it prohibited transportation. It is clear, therefore, that the legislature intended to deal with the class of cases here in issue, in section 10 [57] and not in section 6 [34].

That the legislature did not intend to provide for the forfeiture of a motor vehicle by either of these sections is even more clearly demonstrated by the history of section 10 [57]. The bill as proposed and adopted by the house, read: "Any liquor transported within this state in violation of the provisions of this act; or illegally transported into this state, together with the *casks, bottles, cases or other containers in which it is so transported, and any vehicle used in such illegal transportation*, shall be subject to seizure . . . and upon due proceedings may be adjudged forfeited. Upon a decree of forfeiture, the liquor with the casks, bottles, cases, or containers may be adjudged to be destroyed, or they may be sold in accordance with the decree of the court. *Upon the forfeiture of any vehicle, it shall be decreed to be sold in accordance with directions embodied in the decree . . .*"

This section, as amended in the senate and subsequently adopted and passed by the house, reads: "Any liquor transported into or within this state, *in violation of the provisions of this act* or any act of Congress, now or hereafter in force, together with the *casks, bottles, cases or other containers in which it is so transported*, shall be subject to seizure . . . and upon due proceedings may be adjudged forfeited. Upon a decree of forfeiture, the liquor with the *casks, bottles, cases or containers* may be adjudged to be destroyed, or . . . may be sold in accordance with the decree of the court . . ."

Here a definite proposal to include among the forfeitable articles "any vehicle" used in the illegal transportation of liquor was considered and rejected. This deliberate exclusion of vehicles, where

the offense was illegal transportation, to which such an instrumentality was especially adapted, is corroborative and convincing evidence that it was not the legislative purpose by the use of the word "paraphernalia" in the concurrent provision, section 6 [34], where the offense was keeping for sale, to include a motor vehicle.

The intention of the legislature will be clearly perceived if we bear in mind the fundamental distinction in the character of the provisions of sections 3 and 4 as contrasted with that of the provisions of sections 6 and 10. The function of the former is to set forth what shall be deemed unlawful acts and to specify their punishments, while the province of the latter is to provide for the disposition of liquor illegally kept for sale or transported. Section 6 was intended to prescribe what might be forfeited when the offense charged was for illegal keeping in violation of section 3, while section 10 was intended to prescribe articles subject to forfeiture when the offense charged was transporting liquor in violation of section 4 or section 9 [56]. Since 1855 (Laws 1855, c. 1658, s. 10) "the vessels," and since 1867 (G. S., c. 99, s. 23) "the casks, bottles and vessels" containing forfeitable liquor have been subject to seizure together with the liquor. The manifest purpose of the inclusion of these receptacles with forfeitable liquor was to facilitate the handling of the latter. The forfeiture of these articles, which were of relatively small value, has never been dealt with, nor popularly understood, as penalties or punishments. The substitution in section 6 [34] of the words "or other paraphernalia" for "and vessels," of the limiting words "used in such illegal keeping" for the words "containing the same or used in the sale thereof," and the substitution in section 10 [57] of the words "cases and other containers in which it is so transported" for "vessels containing the same" are consistent with a continuing legislative purpose to include in the forfeitable list such instrumentalities, and only such, as are reasonably necessary to facilitate the convenient handling of forfeitable liquors under the amended provisions of the law and the changed conditions in the traffic. If the legislature had intended to include in the forfeitable list instrumentalities of great value, not because they are necessary to the convenient handling of the liquor, but as an added penalty for the offense of keeping it for sale or transporting it, apt language would have been used. Such a radical change in the meaning of a statute imposing penalties or forfeitures would not have been left dependent upon the judicial construction of words of doubtful meaning.

The growing menace of the automobile as an instrument of crime is suggested by state's counsel as a fact within the purview of the law makers indicative of their purpose to provide for its forfeiture and therefore of controlling importance in construing their language. To the extent that such menace was realized by the legislature it tends rather to emphasize the fact of its deliberate exclusion of vehicles from the list of forfeitable articles enumerated in section 10 [57]. We are concerned here not with what the legislature should have done in view of the known facts, but with what it did in fact do. The constitution invests the legislature with the power of making laws and imposes upon the courts the duty of interpreting them. It is of the highest public importance that the latter do not encroach upon the former. It is better that a temporary evil or mischief be endured than that the distinction between legislative and judicial duties be disregarded.

The legislature intended by the words "other paraphernalia" in section 6 [34] such things, other than casks and bottles but of the same general class, as are customarily used in the keeping for sale of intoxicating liquors. By the words "such illegal keeping" was meant the kind of keeping of which keeping in casks and bottles is an instance. *Corey* v. *Bath*, 35 N. H. 530, 538; *Somers* v. *Emerson*, 58 N. H. 48, 49; *Narramore* v. *Clark*, 63 N. H. 166, 167; *Phillips Exeter Academy* v. *New Parish*, 68 N. H. 10, 11. Likewise the legislature intended by the words "other containers" in section 10 [57] such things, other than casks, bottles and cases, but of the same general class, as are customarily used in the transportation of liquors. The motor vehicle was not of either class of enumerated articles. The conclusion is, therefore, that the legislature did not by the language used in either section intend to provide for the forfeiture of motor vehicles.

*Case discharged.*

YOUNG, J., dissented: the others concurred.