## STATE v. NOAH RICHARDSON

### SAME v. SAME.

*Frank R. Kenison*, Attorney-General, *Ernest R. D'Amours*, Assistant Attorney-General, and *Stephen M. Wheeler*, County Solicitor (*Mr. D'Amours* orally), for the State.

*Haydon C. Covington* (of New York), *Alfred A. Albert* (of Massachusetts), and *Frank E. Blackburn* (*Mr. Covington* orally), for the defendant.

ALLEN, C. J.    The statute (P. L., c. 118, s. 21) provides that boys under ten and girls under sixteen shall not "sell or expose or offer for sale newspapers, magazines, periodicals or other merchandise in any street or public place," and no child unless over ten "shall work as a

bootblack in any street or public place." By another section of the chapter (s. 39), "Whoever employs any child, and whoever permits or suffers any child under his control as parent, guardian or otherwise, to be employed or to work in violation of any of the foregoing provisions" of the chapter, shall be guilty of a criminal offense. The ensuing section (s. 40) provides for a fine for continuance of employment of a child in violation of any such provisions "after being notified thereof by an inspector or truant officer."

In summary of the material facts, the defendant had under his leadership a group of persons, including a boy under ten, engaged in selling or exposing for sale religious magazines on a street in Exeter. He had the full consent of the boy's mother, for him to participate in the exercise, she was one of the group and was near by at the time of the alleged offenses. The boy carried a knapsack containing the magazines and having printed on it their names. On the first occasion a price of five cents also appeared on the knapsack. In respect to the second offense charged, the defendant permitted the boy to sell the magazines, or at least to expose them for sale, after notice by a state child labor inspector that the permission violated the law. An allowance or commission was paid to all who sold the magazines, but they sold only the magazines devoted to the religion of their sect as Jehovah's Witnesses, and their sales were induced by motive to serve that cause. The publisher of the magazines was a religious organization, using all of its available funds in furtherance of its religious purposes, and any "profit motive" in their sale by members of the sect was negligible. All members regard themselves as ordained ministers of God and consider the sale of the magazines to be a religious service as a form of preaching and spreading their strange and generally unacceptable doctrines and tenets.

The cited statutory provisions were first enacted in 1911 (Laws 1911, c. 162) as sections of a child labor law covering the entire field of the subject. The law was an act of social legislation in regulation of the employment of minors under varying ages according to the nature of the employment, educational sufficiencies and sex. The section prohibiting boys and girls below certain ages from selling or working as bootblacks in public places is under a special heading of the chapter having the title of "Prohibited Employment." The incorporation of the law in the revision and codification of the school laws (Laws 1921, c. 85, Pt. III (b)) made no changes affecting its provisions here considered. The employment of children is related in many respects to their education, and the whole subject of child

labor was thought by the legislature to be better dealt with and treated in connection with education, while retaining intact and unweakened the purpose to prevent the abuse of young children in their use as an economic asset.

It is thought that the activity in which the boy under the defendant's leadership was engaged is not within the tenor and spirit of the prohibition of sales in public places. His service was not fairly to be classified as a business enterprise or as work, in the ordinary sense of words. To use a common expression, he was not exploited to help as a source of family income and material resources or to promote the defendant's financial welfare. Any exploitation of the boy was for other than pecuniary ends. He was performing a service under his mother's auspices, and the few cents he received were no impaction on the controlling religious character of his service, so as thereby to transform it into one of employment or work. The money-making feature of his service is too insignificant to receive notice as a factor modifying a strictly religious engagement into one with business attributes. The boy was not a newsboy on the occasions in question, and an occupational element, even of temporary duration, is not to be ascribed to his activity. Nor is there any claim that his education required by law was disturbed or menaced. The defendant was not the boy's employer and neither permitted nor suffered him "to be employed or to work," in any reasonable contemplation of the statute. While the defendant was paid for his service as a "pioneer" in his cause, those enlisted under his leadership were followers rather than employees. They were workers only in a sense devoid of business and material gain.

The State's argument that the statute was partly designed to protect the morals of young children by keeping them off the streets and out of public places, is not impressive. So far as concerns the case, the boy was in his mother's custody and general charge. In respect to the statute, it would be a clearly unreasonable discrimination that young persons might be on the streets with nothing to do, while others might not if they had some occupation there.

Nor is there forceful weight in the argument that the readoptions of the legislation in 1921 and in general statutory revisions show a purpose to keep abreast with advancing social needs. Assuming the needs, the wording of the legislation, so far as here pertinent, is unchanged in any respect by any of the readoptions. It is not the function of the judiciary to provide for present needs by an extension of past legislation. Readoption of a statute without change of lan-

guage implies no change from its original meaning and invites no expanded construction. A law means what it meant to its framers (*Opinion of the Justices*, 41 N. H. 550, 551; *State* v. *Almy*, 67 N. H. 274, 277; *State* v. *Nadeau*, 81 N. H. 183, 185), and its mere repassage does not alter that meaning. While legislation of past enactment and still in force may be applicable to new conditions (*Carter* v. *Craig*, 77 N. H. 200, 206, 207; *Cornish Bridge* v. *Fitts*, 79 N. H. 253; *Haselton* v. *Stage Lines*, 82 N. H. 327, 332), it may not be amended or amplified by the courts to meet them.

In reaching the conclusion of the defendant's freedom from statutory offense, standard principles of statutory construction have been employed. "But as statutory language is not always given its broadest meaning, or a meaning which the context and subject-matter show was probably not intended (*Pierce* v. *Emery*, 32 N. H. 484, 508; *Carter* v. *Whitcomb*, 74 N. H. 482, 488), the evident intention of the legislature as revealed by the act cannot be defeated by giving a single word in the statute an unnecessary meaning." *State* v. *Dunklee*, 76 N. H. 439, 441. The police power is to be exercised in reason, and legislation in its exercise is to be construed reasonably, with due regard for its objectives. And the rule of reasonable construction invokes some measure of elasticity in broadening or narrowing the applications of statutory language. *Pierce* v. *Emery*, *supra;* *Opinion of the Justices*, 66 N. H. 629, 661.

Considering the purposes of the legislation, its context and phraseology, its application would be stretched beyond its fair scope if it were held to embrace a situation such as that here presented. It is not intended to draw any fixed boundaries of application. Service in the cause of religion might become so persistent in occupational character and interference with educational requirements might be so great that the service would be under the ban of the statute. But these features are here absent. The facts do not constitute a mischief or evil which the legislation undertakes to suppress.

Since the decision is reached upon the determination of the scope of legislative action taken, the scope of legislative power does not become an issue.

*Defendant discharged.*

All concurred.